**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **v.** | ) |
| | ) **CRIM NO. 21-CR-198-TSC** |
| **TROY ANTHONY SMOCKS,** | ) **Judge: Chutkan** |
| | ) |
| **Defendant.** | ) |

**MOTION FOR RECONSIDERATION OF THE
MOTION FOR LEAVE TO FILE DOCUMENT AND REOPEN HEARING
ON THE MOTION TO DISMISS
FOR VIOLATION OF THE SPEEDY TRIAL ACT**

COMES NOW Troy Anthony Smocks, by and through counsel, and moves for the court to respectfully reconsider its ruling on defendant's Motion for Leave to File Document and Reopen Hearing on the Motion to Dismiss for Violation of the Speedy Trial Act (Dkt. 30). As reasons therefor, defendant states as follows:

**Procedural History**

1.     On January 14, 2021, the government filed a complaint in this matter. The complaint charged Mr. Smocks with Threats in Interstate Commerce, in violation of 18 U.S.C. § 875(c).

2.     Mr. Smocks was arrested on January 15, 2021.

3.     On March 9, 2021, Mr. Smocks was indicted in this matter. In the Indictment, Mr. Smocks is charged with two counts of Threats in Interstate

1

Communication, in violation of 18 U.S.C. §875(c). (Dkt. 8) Each count carries a maximum penalty of five years and/or a fine.

4.      On March 18, 2021, undersigned counsel entered his appearance under the Criminal Justice Act to represent Mr. Smocks.

5.      On March 29, 2021, Mr. Smocks, through counsel, filed its Motion to Dismiss for Violation of the Speedy Trial Act Violations (hereinafter "Motion to Dismiss"). (Dkt. 16) The motion was amended without objection on April 4, 2021, to fix some non-substantive, typographical errors. (Dkt. 19) In the Motion to Dismiss, Mr. Smocks sought to dismiss the indictment due to the violation of his speedy trial rights. Mr. Smocks incorporates the arguments made in the Motion to Dismiss herein.

6.      On April 12, 2021, the government filed its Opposition to the Motion to Dismiss (hereinafter "Opposition") (Dkt. 21).

7.      On April 13, 2021, the defense filed a Reply to the government's Opposition (Dkt. 25). As part of the Reply, the defense insisted that the government should provide proof of its allegations for reasons for Mr. Smocks delays in transport, rather than relying on hearsay representations or proffers by the government or its witnesses. This included the government's assertion regarding the weather cancellation of the February 17, 2021, flight, as well as the medical

condition that caused Mr. Smocks to be excluded from the March 8, 2021, flight.

8.      On May 14, 2021, this Honorable Court held a hearing on the Motion to Dismiss. Arguments were made by both parties. No witness testimony or additional evidence was provided at that time by either party, including no further documentary or witness support of the reasons for the delay in transporting Mr. Smocks. The court took the oral arguments by the parties under advisement and indicated it would be issuing a ruling from chambers.

9.      On May 7, 2021, prior to the court's ruling on the Motion to Dismiss, Mr. Smocks filed a Motion for Leave to File Documents and Reopen Hearing on the Motion to Dismiss (hereinafter "Motion for Leave"). (Dkt. 30) As part of its Motion for Leave, Mr. Smocks, *inter alia*, requested the opportunity to both submit additional documentation in support of its Motion to Dismiss and the defense's request, and to have the Motion to Dismiss hearing reopened to present further evidence and make further argument. The two primary arguments that were made in the Motion for Leave were that certain reasons for delay in Mr. Smocks' transport from Texas to the District of Columbia, namely a medical diagnosis received during the Grady County Jail, as well as weather conditions that caused delay, were of a questionable nature. Exhibits discussing the weather conditions which provided more detail of the weather conditions that more accurately

conveyed the weather conditions that could have had some effect on the transport of Mr. Smocks were provided as Exhibits. Mr. Smocks also sought the desire to supplement the record with the addition of medical records from Grady County and or the District of Columbia Department of Corrections that had not been received at the time the Motion for Leave was filed. Mr. Smocks incorporates the Motion for Leave and its Exhibits by reference herein.

10.     Also on May 7, 2021, the court issued an Order Denying the Motion to Dismiss. (Dkt. 32) A nine-page Memorandum Opinion detailing the reasons for the denial of the Motion to Dismiss was also filed. (Dkt. 33) The Court based its ruling upon having calculated (19) nineteen excludable days against the Speedy Trial Act's time calendar.

11.     On May 11, 2021, the court took the Motion for Leave under advisement and stayed further briefing of those orders until further order of the court.

12.     On July 2, 2021, the court denied the Motion for Leave, and the court also simultaneously denied the request for a hearing. The court ruled in part due to the fact that no additional evidence had been submitted that would alter the findings of the Motion to Dismiss, thus making the motion futile.

### Argument

While the court has issued its ruling on both the original Motion to Dismiss and the Motion for Leave, Mr. Smocks respectfully requests that this court reconsider its ruling on these Motions. This motion is brought considering Rule 51(b), which states that "A party may preserve a claim of error by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection." Fed. R. Crim. Pro. 51(b). Mr. Smocks further states that the error is plain error, and therefore it is an "error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed. R. Crim. Pro. 51(b). Furthermore, failure of a district judge to adhere to the statutory mandates of 18 U.S.C. 3161(h)(7)(A), to the Speedy Trial Act, is not "harmless error" because it means that the judge would have applied the incorrect legal standard in resolving excludable or non-excludable days under the Act's mandate. *See* Zender v. United States, 547 U.S. 489, 508-09 (2006). Mr. Smocks also makes this request pursuant to Rule 12(b)(1), which allows a party to raise "by pretrial motion any defense, objection or request that the court can determine without a trial on the merits." Fed. R. Crim. Pro. 12(b)(1). As this involves issues

of fact that are material to a resolution of a constitutional claim, namely his Sixth Amendment right to a speedy trial, Mr. Smocks respectfully requests a hearing. *See* United States v. Voigt, 89 F.3d 1050 (3rd Cir. 1996).

In addition, Mr. Smocks requests that this court consider this motion as a Motion for Reconsideration of the court's ruling on the Motion for Leave, as it is being filed within ten days of the original court ruling. See, e.g., United States v. Healy, 376 U.S. 75 (1964).

As argued in previous motions, Mr. Smocks has insisted that his rights under the Speedy Trial Act have been violated. However, in further consideration by this court, based upon the arguments and case law presented below, it is apparent that certain statutory provisions and cases related to the Speedy Trial Act were not sufficiently taken into consideration. Because these arguments were not presented for the court's consideration, either by Mr. Smocks' primary arguments or by the government presenting their obligations under case law or statue, which the government should have been done in good faith, Mr. Smocks respectfully presents these arguments for the court's consideration at this time and requests the court to reconsider its ruling and dismiss this case for violation of the Speedy Trial Act.

A.    **Violation of 18 U.S.C. § 3161(h)(7)(A)**

The Speedy Trial Act, under 18 U.S.C. § 3161(h)(7)(A), allows for the

6

following:

> **(h)**The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
> **(7) (A)** Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

## 1. No "ends of justice" determination was ever made

It is clear in the record that the government never made a request for a continuance any time between the time Mr. Smocks was arrested and the time the indictment was obtained. Neither, of course, did the defense ask for a continuance, nor did the court issue a *sua sponte* continuance. Instead, the government has arrived at the late hour after a Motion to Dismiss based upon Speedy Trial Act violations is filed, failed to point out that they did not comply with the statute and, instead have provided excuses based upon hearsay statements presented via affidavit. Given the established case law, respectfully, the court should reconsider

its decision and should eventually dismiss Mr. Smocks matter due to the violation of the Speedy Trial Act.

On April 12, 2021, in its Memorandum in Opposition to Motion to Dismiss (Dkt. 20) (hereinafter "Memorandum"), the government ignored the requirements of 3161(h)(7)(A) and rather made its case by arguing that under 3161(h)(1)(F), there should be the retroactive exclusion of days for inclement weather, and the alleged illness of Mr. Smocks, while at all times being aware that the relevant periods of delay, could only be lawfully excluded after first obtaining an "ends of justice" continuance under the provisions of 3161(h)(7)(A), which had never been granted by a judge, nor did they request for the court to do so.

The Speedy Trial Act, under 18 U.S.C. § 3161(h)(7)(A), permits the exclusion of time "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). The government, at no time, made such a request, nor did they disclose to the court or the parties that such a request was required under the law but never made. Accordingly, in this case, the court has never been asked, nor has it concluded, that the "ends of justice" allow for exclusion of time.[1]

---

1 In its legislative history, Congress made clear that the purpose of the Speedy Trial Act was to protect defendants like Mr. Smocks from delays caused by a behemoth system. *See* United States v. Salzmann, 417 F.Supp. 1139 (E.D.

The government cannot claim ignorance as to the requirement of 3161(h)(7)(A) and the "ends of justice" requirement. Such a requirement is mentioned in a case the government cited in its Opposition, namely Bloate v. United States, 559 U.S. 196 (2010). In *Bloate*, the Supreme Court also determined that delays in excess of the automatically excludable periods under 3161(h)(1) of the Speedy Trial Act, can only be excluded if a judge makes case specific findings under the 'ends of justice' continuance provisions to 3161(h)(7)(A). *Bloate* at 1356.

Accordingly, despite the government's presumable knowledge of its obligation, this Honorable Court never had the opportunity to issue any "ends of justice" finding based upon a motion filed by the government. Instead, the government has made *post hoc* arguments for its justifications as to why certain days should have been excluded. This procedure is not permitted under the Speedy Trial Act. Therefore, this court should revisit its decision and reopen its hearing as well as reconsider its decision on the Motion to Dismiss.

Furthermore, because of the actions (or rather, inactions) of the government's

---

N.Y. 1976) ("In its discussion of its rejection of calendar congestion and unobtained witnesses as excuses for delay, the House Report on the bill eventually passed as the Speedy Trial Act noted the hard line it was taking against what it termed "institutional delay." It reasoned that. . . the nature of the concept of speedy trial is one which recognizes that institutional delays occasioned by poor administration and management can work to the detriment of the accused. Placing a prohibition on the granting of continuances for these reasons serves as an incentive to the courts and the Government to effectively utilize manpower and resources so that defendants may be tried within the time limits provided by the bill.  H.R.Rep.No.1508, 93d Cong., 2d Sess., 1974 U.S.Code Cong. & Admin.News pp. 7401, 7426. See Steinberg, Right to Speedy Trial: The Constitutional Right and Its Applicability to the Speedy Trial Act of 1974, 66 J.Crim.L. & Criminology 229, 235 (1975).")

requests for continuance due to the "ends of justice" requirement, it is now seeking

retroactive action by the court. This however is not permitted. *See* United States v.

Carraquillo, 667 F.2d 382 (3rd Cir. 1981) (..."A district judge cannot wipe out

violations of the Speedy Trial Act, after they have occurred by making the findings

that would have justified granting an excludable delay continuance before the

delay occurred.") *Carrasquillo* at 386. *See also* United States v. Brooks, 697 F.2d

517 (3rd Cir. 1982) ("…a judge could not grant an 'ends of justice' continuance

nunc pro tunc, providing after the fact justification for unauthorized delays.

Rather...the district judge must consider the matter at the outset and determine

whether the 'ends of justice' require that the trial be postponed.") *Brooks* at 552.

In conclusion, by having the government requesting "ends of justice"

findings after the fact is simply not allowed. If this Honorable court could forgive

an extended quote from United States v. Janik, 723 F.2d 537 (7th Cir. 1983), a clear

explanation, with internal citations, explains why the government's request fails:

> Against all this the government argues that otherwise nonexcludable
> time may be excluded if "the ends of justice ... outweigh the best
> interest of the public and the defendant in a speedy trial." The problem
> is that this language comes as we have seen from the section of the
> Act that allows exclusion of "Any period of delay resulting from a
> continuance granted by any judge on his own motion or at the request
> of" either party "if the judge granted such continuance on the basis of
> his findings that the ends of justice served by taking such action
> outweigh the best interest of the public and the defendant in a speedy
> trial." 18 U.S.C. Sec. 3161(h)(8)(A). There must be "action" taken by

the judge, namely a continuance, based on findings made by the judge. The judge in this case never granted a continuance to give herself more time to dispose of Janik's motion. She did, when she refused to dismiss the indictment, make findings that the ends of justice had warranted the delays, and we have already said that the findings required by the Act may be entered after the continuance is granted. **But the continuance itself must be granted before the period sought to be excluded begins to run**. Since **the Act does not provide for retroactive continuances**, <u>United States v. Carlone</u>, 666 F.2d 1112 (7th Cir.1981), "a judge could not grant an 'ends of justice' continuance nunc pro tunc, providing after the fact justification for unauthorized delays. Rather, ... the district judge must consider the matter at the outset and determine whether the 'ends of justice' require that the trial be postponed." <u>United States v. Brooks</u>, [697 F.2d 517, 522]. See <u>United States v. Carrasquillo</u>, 667 F.2d 382, 386 (3d Cir.1981). A district judge cannot wipe out violations of the Speedy Trial Act after they have occurred by making the findings that would have justified granting an excludable-delay continuance before the delay occurred. *Janik* at 545.

Accordingly, because the government failed to make its request to continue the matter pursuant to the ends of justice, this matter should be dismissed. Further, since the government failed to 1) represent to the court that it had this obligation in its pleadings; 2) fail to make the request in violation of its obligations; and 3) argue in its opposition for time exclusions in circumvention of the law and in violation of Mr. Smocks' rights (despite citing cases that speak of this requirement), the court should consider government's Opposition to have argument in bad faith. Thus, for these reasons and for additional reasons argued in this pleading and in prior

pleadings, Mr. Smocks' matter should be dismissed with prejudice.

### 2.      Exclusions based on Weather from February 12-20, 2021

In its opinion, this Honorable Court determined that the dates due to weather delay caused in the Oklahoma City area, from February 12 to February 20, 2021, were properly excluded under 18 U.S.C. § 3161(h)(1)(F). "The court therefore agrees with the Government that a nine-day delay in transporting Smocks due to the extreme winter weather in mid-February was reasonable." May 10, 2021, Memorandum Opinion at 8. However, such a conclusion of excluding those nine days is not permitted. In the U.S. Supreme Court opinion of United States v. Tinklenberg, 563 U.S. 647 (2011), the Court held that it is not appropriate to exclude weekend days or holidays from the Speedy Trial Act.. *See Tinklenberg* at 661-62. ("The Sixth Circuit exempted weekend days and holidays because it believed that Subparagraph (F) incorporated F.R.Crim.P. 45(a).... But in our view Subparagraph (F) does not incorporated Rule 45.... We believe the better reading of Subparagraph (F) would include weekend days and holidays in its 10-day time period.") Accordingly, pursuant to *Tinklenberg*, this court should not have excluded four days between February 12 and 20, 2021: a) Saturday, February 13, 2021; b) Sunday, February 14, 2021; c) Monday, February 15 (President's Day); and Saturday, February 20, 2021.

Furthermore, in its Memorandum Opinion of July 2, 2021, this Honorable Court opined that based upon evidence provided by way of reports from Will Rogers World Airport ("WRWA"), which were provided as Exhibits to the Motion for Leave, the court indicated that the reports showed only delay issues from February 14-17, 2021. Memorandum Opinion of July 2, 2021, at 3-4. ("As reported by WRWA, a significant portion of flights were cancelled during, at a minimum, the period of February 14 through February 17, or four days.') The court eventually determined that due to the fact this would create 29 days, making it one day short of the 30-day statutory cap, and thus making the Motion for Leave "futile." *Id.* at 5. However, as indicated previously, both February 14 and 15, 2021, cannot be excluded under *Tinklenberg*. Accordingly, solely on this issue, that would put the count at 31 days, which would put the government over the cap and thus this court is obligated under the statute to dismiss the case.

Regarding the government's actions in its argument, the government's arguments indicate bad faith on their part. First, the defense would note that the government sought to exclude all the time from February 12 to 20, 2021, without proffering **any** information about what flights were and were not cancelled during this time. Furthermore, the government sought to exclude multiple days they knew, or should have known, based upon *Tinklenberg*, a Supreme Court case decided in

2011 were not permitted to be excluded under the Speedy Trial Act. Federal

prosecutors like everyone else are presumed to know the law. United States v.

Barker, 514 F. 2d 208 (D.C. Cir 1975).

In addition, the court may want to consider that there may be an issue with

the government's witness representations via affidavit that, at best, should require

more substantive proof other than the hearsay representation. In the government's

Opposition, the government represented that "the state of Oklahoma (where the

defendant was located) entered a winter weather State of Emergency beginning on

February 12, 2021."). Opposition at 13. However, in the government's

Memorandum, the government represented to the Court that "[t]he winter storm

caused the cancellation of numerous JPATS flights, including a February 17, 2021,

flight that the defendant was available to take. And the cancellations caused a

subsequent backlog, creating further delay." Opposition at 14.   Accordingly, the

government's proffers are highly suspect for two reasons. First, the government

represents, not that Mr. Smocks, was actually "scheduled" to take the February 17,

2021, flight as was reported on Page 8 of the Opposition regarding the February 8,

2021, flight, but only that Mr. Smocks was "available" to take the flight. Secondly,

without supporting evidence, the government's representation about the winter

storm causing "the cancellation" of the February 17, 2021, flight can be taken in

14

bad faith where it appears to be in direct conflict with the (WRWA) Will Rogers

World Airport, Winter Storm Update, for February 17, 2021, previously submitted

to the Court as the Motion for Leave, Exh. 5. That update stated that: "6:30 AM,

2/17/2021 - Airport Updates / Conditions: Crews worked throughout the night to

maintain the airfield, airport roadways, sidewalks, and employee parking facilities.

[The airfield is operational this morning]. Operations employees of the airport,

tasked with checking the safety and conditions on the airfield, are reporting that

crews may need to occasionally close the runway and associated taxiways to

broom off snow flurries that are still falling**. Aside from those occasional**

**closures, the airfield should be ready for flights to resume today**." (Emphasis

added). It should be noted that the government presented no such evidence of an

actual February 17, 2021, cancelled flight, nor did the government obtain an 'ends

of justice' continuance under 3161(h)(7)(A)(B)(i), for transportation problems with

inclement weather. Because of the inconsistencies with the government's proffer

and its conflict with the airport website itself, undoubtedly a neutral party in this

matter, it becomes reasonable to question the validity and good faith of the

government's Proffer.

Furthermore, following the rule outlined in *Tinklenberg*, this court excluded

seven additional days (beyond the four previously mentioned) in its count that, due

to the fact that they are weekend days or holidays, should have been excluded. They are as follows: 1) Saturday, January 16, 2021; 2) Sunday, January 17, 2021; 3) Monday, January 18, 2021 (Martin Luther King, Jr. Day – federal holiday); 4) Saturday, January 23, 2021; 5) Sunday, January 24, 2021; 6) Saturday, January 30, 2021; and 7) Sunday, January 31, 2021. Accordingly, these additional days should be included in the Speedy Trial Act count and would place the number of days way beyond the 30 day limit, thus requiring dismissal.

Finally, it is worth noting that the government's delay in getting the indictment was in no way related to getting Mr. Smocks to the District of Columbia. At the hearing on May 14, 2021, the Court asked the government on at least three occasions for the reasons there was a delay in getting the indictment, aside from the transportation issues. However, the government gave no reason, but continued to justify its transportation excuses. In a case that similarly mirrors that of Mr. Smocks' in some ways, United States v. Cruz-Rivera, No. 1:20-cr-00245-JPH-TAB-01 (S.D. Ind. 2021) the court relevantly stated:

> The government has not shown that the delay in bringing the indictment "result[ed] from transportation" of Mr. Cruz-Rivera. See 18 U.S.C. § 3161(h)(1)(F). The government devotes most of its response to explaining why there was a delay in transporting Mr. Cruz-Rivera from Florida to Indiana. But the government has not explained why, as a threshold matter, it could not have pursued an indictment in Mr. Cruz-Rivera's absence.… In short, the government has not shown a nexus between the delay in transporting Mr. Cruz-

16

> Rivera and the delay in bringing the indictment against him, so the
> transportation exclusion under Section 3161(h)(1)(F) of the Speedy
> Trial Act does not apply. Cruz-Rivera at 4 (citations omitted)

Indeed, given the lack of explanation as to why there was a delay in getting the argument, this court may consider not providing the transportation exclusion under § 3161(h)(1)(F). Should the court do so, it would clearly have more days than are necessary that are not excluded to find a Speedy Trial Act violation. Mr. Smocks would respectfully request that the court do so and, for this and other reasons presented, should dismiss the matter.

Should the court find that the government does not have a valid explanation as to why it did not seek a continuance, and the court does indeed find that a dismissal is appropriate, the court should dismiss the case. Respectfully under these circumstances, Mr. Smocks would request that the matter is dismissed with prejudice. *See* United States v. Hernandez-Amparan, 600 F. Supp. 839, 844 (W.D. Tex. 2009) ("the government had numerous opportunities to seek a continuance when the delay in defendant's trial approached and then exceeded seventy days. See 18 U.S.C. 3161(h)(7)(A). However, the government did not seek a continuance, and did not explain its failure to do so. These circumstances demonstrate that defendant's rights were violated through no fault of his own, and with no explanation from the government, supporting a dismissal with prejudice.").

17

### 3.  Medical Diagnosis Issues

In its May 10, 2021, Memorandum Opinion, this Honorable Court excluded three days, specifically March 7 to March 9, 2021, as part of the Speedy Trial Act calculation. As argued previously, Mr. Smocks asserts that the reason for his exclusion from travelling was based upon a made-up diagnosis. As reasons for this conclusion, the defense has obtained the records from the Grady County Jail, a copy of which is attached hereto as Exhibit A. While the government has proceeded with hearsay evidence from Kevin Wykert, these records provide some concern about the accuracy of the hearsay that was presented by Agent Wykert. Specifically, there are many discrepancies that put into question the legitimacy of the claims made in the facility. Some, but not all the concerns, include the following: 1) On the alleged recording of the COVID testing results, there seems to be a change of a date that occurred on the collection data, which appears to have been change from a date of 3/7/21 at 1600 hours to 3/6/21 (Exh. 1 at 18); 2) the (new) date seems to indicate that the results were obtained 11 hours later (from 3/6/21, 1600 hours to 3/7/21, 0300, or 3:00 a.m. in the morning) which seems like a very odd time to review results (Exh. 1 at 18); 3) there somehow was a need for an 11-hour delay on getting results, when the results that were obtained when Mr. Smocks arrived were obtained in 20 minutes (January 29, from 1040 to 1100)

(Exh. 1 at 15); 4) Neither "Prison in Transit Medical Summary" forms that indicate a positive COVID test are signed by a doctor and include a date of June 19, 2021 (Exh. 1 at 4-5); 5) The sheet that is supposed to show the medication that Mr. Smocks presumedly would receive due to COVID is entirely blank not providing any indication of Mr. Smocks actually receiving medication (Exh. 1 at 6); 6) None of the documents that require signatures from Troy Smocks are actually signed by Troy Smocks, and there is no indication or procedures taken to show that the patient refused signature (Exh 1 at 7-12, 16, 20); 7) There is independent medical documentation showing a negative COVID test from Mr. Smocks arrival in January, but no such documentation exists for the alleged positive test that disallowed Mr. Smocks from traveling (Exh. 1 at 14). In short, there are many documents which appear to be of questionable creation and create issues as to whether these documents were made concurrently with accurate information,

Furthermore, there is an additional issue of his COVID-19 results when he arrived at the District of Columbia Department of Corrections. A copy of Mr. Smocks' medical records from the D.C. Department of Corrections are attached hereto as Exhibit B. In those records, it reports that on March 25, 2021, three weeks from the time of his alleged positive COVID test, Mr. Smocks' Rapid COVID-19 PCR (molecular) test was negative. This would further support the

theory that Mr. Smocks never was positive for COVID, as it is common for people who had recovered from COVID to test positive up to three months afterward. *See* https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/isolation.html ("If you have recovered from your symptoms after testing positive for COVID-19, you may continue to test positive for three months or more without being contagious to others."). Accordingly, the fact that Mr. Smocks tested negative within 3 weeks of his alleged positive test, along with the other issues in the medical records, provide support that there was no COVID-19 positive test of Mr. Smocks, and therefore the three days from March 7 to March 9, 2021, should also not be excluded and further contribute to the Speedy Trial violation.

While this case has been pending. Mr. Smocks has obtained medical records from Grady County as well as documents from the District of Columbia Department of Corrections. Both these medical records are included as Exhibits A and B, respectively. Due to the medical nature of these records, including multiple medical diagnoses and records not relevant to the arguments in this pleading, they have been filed under seal, but are nevertheless incorporated herein for argument purposes.[2]

---

2  Undersigned counsel has spoken to Mr. Smocks and, for purposes of this argument, has authorized any and all discussion of his alleged COVID diagnoses to be discussed without the need to include those details under seal.

WHEREFORE, for the reasons and arguments made above, Defendant Troy Anthony Smocks prays that the court reconsider its ruling and either reopen the matter for a hearing, permit the filing of the additional exhibits (both in this pleading and in the Motion for Leave), and/or grant the Motion to Dismiss based on Speedy Trial Act violations.

Respectfully submitted,

TROY ANTHONY SMOCKS
By Counsel

/s/ John L. Machado
John L. Machado, Esq.
Bar No. 449961
Counsel for Troy Anthony Smocks
503 D Street, N.W., Suite 310
Washington, DC 20001
Telephone: (703) 989-0840
E-mail: johnlmachado@gmail.com

21

## Certificate of Service

I hereby certify that a true copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system this 12th day of July, 2021, which will send a notification of such filing (NEF) to the following to all counsel of record.


   /s/John L. Machado
John L. Machado, Esq.
Bar Number 449961
Attorney for Troy Anthony Smocks
Law Office of John Machado
503 D Street NW, Suite 310
Washington, D.C. 20001
Telephone (703)989-0840
Email: johnlmachado@gmail.com