IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL NO. 21-cr-00198 (TSC) |
| TROY ANTHONY SMOCKS, | |
| Defendant. | |

## MEMORANDUM IN OPPOSITION TO MOTION FOR RECONSIDERATION

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, respectfully submits this memorandum in opposition to Defendant Troy

Anthony Smocks' Motion for Reconsideration of the Motion for Leave to File Document and

Reopen Hearing (Dkt No. 42) (the "motion for reconsideration").

### BACKGROUND

*The Motion to Dismiss*

On March 29, 2021, the defendant filed a motion to dismiss the indictment alleging a

violation of the Speedy Trial Act (Dkt No. 16), and the defendant filed an amended version of the

motion to dismiss on April 4, 2021 (Dkt No. 19).[1]  The defendant's motion incorrectly argued that,

---

[1] Around 12 days earlier, on the evening of March 17, 2021, an e-mail message was sent to counsel for the United States.  The e-mail message purported to have been sent by one of the defendant's family members, and contained as an attachment an unfiled, *pro se* motion to dismiss the indictment (the "e-mailed document").  The e-mailed document was never properly filed with the Court, but on the morning of March 18, 2021, counsel for the United States submitted it as an exhibit attached to a Notice of Filing (Dkt No 13, Exhibit A).  On March 26, 2021, counsel for the defendant sent an e-mail message to counsel for the United States agreeing that there was no pending motion at that time because the e-mailed document was never properly filed or docketed in the court record.  The e-mailed document, which purports to have been prepared by the defendant, included language stating that, on March 6, 2021, "SMOCKS was informed by jail

because more than 30 calendar days passed between the defendant's arrest (January 15, 2021) and

the return of an indictment (March 9, 2021), the indictment must be dismissed under the 18 U.S.C.

§ 3161(b).

On April 12, 2021, the United States filed a memorandum in opposition to the motion to

dismiss, with 12 attachments, two of which were filed under seal (Dkt No. 21).  The United States

argued that the indictment was timely returned within 30 days of arrest after accounting for periods

of excludable delay due to "other proceedings concerning the defendant."  18 U.S.C. § 3161(h)(1).

We explained that each of these periods of delay due to "other proceedings" were "automatically

excludable [because] they may be excluded without district court findings."  *Bloate v. United*

*States*, 559 U.S. 196, 203 (2010).

The United States argued that, first, the period of seven days from January 15 through 21,

2021, were automatically excluded from the Speedy Trial Act time limits because there were

"pretrial motions" pending in the Eastern District of Texas (18 U.S.C. § 3161(h)(1)(D)), and

because the proceedings in Texas were "relating to the transfer of a case or the removal of any

defendant from another district" (18 U.S.C. § 3161(h)(1)(E)).  (Dkt No. 21 at 2-6, 11-12.)  Second,

we argued that ten additional days of delay resulting from transportation of the defendant to

Washington, D.C., were automatically excluded from the Speedy Trial Act time limits regardless

of whether the delay was reasonable (18 U.S.C. § 3161(h)(1)(F)).  (Dkt No. 21 at 12.)  Third, we

argued that any additional delay in the defendant's transportation to Washington, D.C., was

reasonable and therefore also automatically excluded from the Speedy Trial Act time calculations

under 18 U.S.C. § 3161(h)(1)(F).  The reasonable delay was due to: (a) a medical condition

---

staff, that due to a 'Positive' test result for COVID-19, that his transport to the Federal District of
Columbia, would be delayed even longer."  (Dkt No, 13, Exhibit A at 3.)

identified on March 7, 2021, that prevented the defendant from travelling on a scheduled flight[2] (Dkt No. 21 at 8, 13); (b) a winter storm that caused major disruptions in much of the country including Oklahoma (where the defendant was detained awaiting transportation), and that involved flight cancellations, a winter weather State of Emergency, and water service outages in Oklahoma from around February 12-20, 2021 (*id.* at 8, 13); and (c) general challenges with prisoner transportation brought on by the COVID-19 pandemic including the imposition of restrictive public health measures to protect the prisoner population, affecting much of the time period when the defendant was held at Grady County Jail in Oklahoma, from January 29, 2021, through March 2021 (*id.* at 7-8, 14-15).

The United States also argued that even if there were a violation of the Speedy Trial Act, there was no basis for a dismissal of the indictment with prejudice. (Dkt No. 21 at 15-18.)

The defendant filed a reply brief in support of his motion to dismiss on April 13, 2021 (Dkt No. 26). Among other things, the defendant "denie[d] that he was not healthy or unwell on March 7-8, 2021" (*id.* at 4), and the defendant argued that the government should be "punished" because the delays in transportation need not have delayed the grand jury return of an indictment ("Mr. Smocks did not have to be present for him to be indicted") (*id.* at 5-6).

The Court held a motions hearing on April 14, 2021, and heard oral argument from the parties.

On May 10, 2021, the Court issued an Order and Memorandum Opinion denying the motion to dismiss without prejudice (Dkt Nos. 32, 33). Citing Supreme Court precedent, the

---

[2] The defendant's motion for reconsideration openly describes the medical issue as a positive test result for COVID-19, and waives any privacy protections over that information by stating that the defendant "has authorized any and all discussion of his alleged COVID diagnosis to be discussed without the need to include those details under seal." (Dkt No. 42 at 20 n.2.)

Memorandum Opinion concluded as a matter of law that "[i]f a circumstance or occurrence constituting an 'other proceeding' [18 U.S.C. § 3161(h)(1)] exists, that proceeding need not actually have caused – or even have been expected to cause – a delay in order for the time period affected by that proceeding to be excludable under the Speedy Trial Act." (Dkt No. 33 at 4.)

The Court determined that, of the 53 days that elapsed from the date of arrest to the date of indictment, at least 29 days were excluded due to "other proceedings concerning the defendant," and therefore the indictment was timely returned within no more than 24 days of the date of arrest accounting for excludable delay. (*Id*. at 9.)  First, the Court concluded that ten days of delay resulting from the transportation of the defendant were "automatically excludable" under 18 U.S.C. § 3161(h)(1)(F). (*Id*. at 5-6.)  Second, the Court concluded that the seven days from January 15-21, 2021, must be excluded because there were pretrial motions pending on each day during that time period. (*Id*. at 6.)[3]  Third, the Court concluded that nine days of delay from February 12-20, 2021, were reasonable (and therefore automatically excludable) in light of the "extreme winter weather in mid-February" that caused the cancellation of numerous Bureau of Prisons flights including one on which the defendant was scheduled to travel. (*Id*. at 7-8.)  Fourth, the Court determined that at least three additional days of delay in transportation from March 7-9, 2021, were reasonable due the defendant's positive test result for COVID-19.[4]  In light of these 29 days of excludable delay, the Court concluded that that the indictment was timely returned, and the

---

[3] The Court also determined that the "day of event that triggers the Speedy Trial Act, in this case Smocks' arrest [on January 15, 2021] is not included in the calculation; the clock begins to run the following day." (Dkt No. 33 at 5 n.2.)  The date of January 15, 2021, is therefore excludable for multiple different reasons.

[4] The Court considered only the three days from March 7-9 "because an indictment was filed in this case on March 9, terminating the relevant period under the Speedy Trial act." (Dkt No. 33 at 8 n.3.)

Court to consider the government's additional arguments regarding general challenges with prisoner transportation brought on by the COVID-19 pandemic. (*Id*. at 9.)

### *The Motion for Leave to File Document and Reopen Hearing*

On May 7, 2021, three days prior to the Court's Order denying the motion to dismiss, the defendant filed a Motion for Leave to File Document and Reopen Hearing (the "May 7 motion") (Dkt No. 30). The May 7 motion asked the Court to file certain attached exhibits in support of the motion to dismiss, and to reopen the hearing to allow the presentation of additional evidence (*id*. at 1).

In the May 7 motion, the defendant first "reassert[ed] . . . that he was in good health on March 8, 2021," and suggested that he did not, in fact, test positive for COVID-19 (*id*. at 2-3). In support of this allegation, the defendant attached to the May 7 motion three documents that purported to be written statements made by individuals who had been inmates at the Grady Correctional Facility in early 2021; each statement described a crowded bus ride to an airfield on the date of the inmate's departure (*id*. at Exhibits 1-3). Second, the defendant provided two documents about the mid-February winter storm that were purportedly obtained from the website of the Will Rogers World Airport (a commercial, passenger airport) in Oklahoma City, Oklahoma (*id*. at Exhibits 4-5). The documents include information that, as early as February 12, 2021, the Will Rogers World Airport was experiencing flight "[d]elays . . . due to severe winter weather," and that there had been periods of closed runways, and challenging conditions requiring treatment of slick spots on roads and sidewalks (*id*., Exhibit 4 at 4). The documents additionally describe significant disruptions and flight cancellations at the Will Rogers World Airport from February 13-18, 2021 (including noting that on February 18, 2021, only four of the seven carriers operating

at the airport were able to get early flights out) (*id*. at Exhibits 4-5), but did not provide any information about the situation at Will Rogers World Airport from February 19-20, 2021.[5]

On May 11, 2021, the Court issued a Minute Order staying briefing on the May 7 motion, and stating that the May 7 motion had been taken under advisement (May 11, 2021, Minute Order).

On July 2, 2021, the Court issued an Order denying the May 7 motion, which the Court construed as a motion for reconsideration (Dkt No. 40).  The Court concluded that the defendant had "failed to submit any additional evidence or argument to alter the [C]ourt's ultimate determination on the Motion to Dismiss" (*id*. at 5).

First, the Court noted that the three witness statements provided by the defendant do not support any allegation that the defendant was "provided with a false diagnosis of an illness so that he would be excluded from the flight" (*id*. at 2, *citing* the May 7 motion at 5-6).  Instead, as the Court explained, the statements submitted by the defendant merely described "crowded conditions [at] the jail and [in] transport vehicles" (*id*.).  Consequently, there was only "bare speculation" to support the defendant's allegations, and nothing "sufficient to alter the court's findings" (*id*.).

Second, the Court rejected the defendant's arguments that the website pages from the Will Rogers World Airport cast any doubt on the Court's earlier decision that the winter weather emergency created reasonable delay.  The Court was unconvinced that it was appropriate to use weather-related flight cancellations from the Will Rogers World Airport ("a major, international, commercial airport . . . with airport maintenance crews standing ready to treat runways, taxiways, roadways, and walking surfaces to maintain airport operations," *citing* May 7 motion Exhibit 4 at

---

[5] The May 7 motion did not provide any information about flight disruptions suffered by the Justice Prisoner & Alien Transportation System ("JPATS"), which operates its own "fleet of aircraft [in order] to move prisoners over long distances more economically and with higher security than commercial airlines" (Declaration of Kevin Wykert, Dkt No. 21, Exhibit J, at 1).

5) as a metric to assess the "reasonableness of the United States Marshals' decision regarding the necessity of its own flight cancellations" (*id*. at 3). The Court determined that, even if only a few of the days from February 12-20 were to be excluded (such as the four-day period from February 14-17, where the Will Rogers International Airport experienced widespread flight cancellations), the indictment was still timely (*id*. at 3-4).

### The Motion for Reconsideration

On July 12, 2012, the defendant filed a motion for reconsideration (the "motion for reconsideration") (Dkt No. 42). The motion for reconsideration appears to ask for reconsideration of the Court's July 2, 2021, order denying the May 7 motion, and also the Court's May 10, 2021, order denying the motion to dismiss (*id*. at 5-6). Attached to the motion for reconsideration as sealed exhibits were two sets of medical records under seal that the defendant obtained from Grady County Jail and the D.C. Department of Corrections (*id*. at Exhibits 1-2).

### ARGUMENT

The motion for reconsideration raises three primary arguments in support of the relief sought: (1) the government did not seek or obtain an "ends of justice" continuance under 18 U.S.C. § 3161(h)(7)(A) between the time of the defendant's arrest and indictment (*id*. at 6-12); (2) the Court should not have excluded any weekend or holiday dates from the Speedy Trial Act calculations (*id*. at 12-17); and (3) the defendant maintains that his positive test result for COVID-19 was a "made-up diagnosis," and believes that the medical records support that conclusion (*id*. at 18-20). The defendant is completely mistaken on the law and the facts, and he presents no basis for the Court to reconsider any of its prior rulings. The motion for reconsideration must be denied.

### *Legal Standard – Motion for Reconsideration*

"The Federal Rules of Criminal Procedure do not provide for motions to reconsider interlocutory orders in criminal cases." *United States v. Hemingway*, 930 F. Supp. 2d 11, 12 (D.D.C. 2013).[6]  Courts that have chosen to consider such motions have applied an "as justice requires" standard.  *Id.*, *citing United States v. Sunia*, 643 F. Supp. 2d 51, 60-61 (D.D.C. 2009). "Justice may require reconsideration where a court patently misunderstood the parties, made a decision beyond the adversarial issues presented, or made an error in failing to consider controlling decisions or data, or where a controlling or significant change in the law has occurred." *Id.*, *citing Arias v. DynCorp*, 856 F. Supp. 2d 46, 52 (D.D.C. 2012).  A court "may deny a motion for reconsideration where it raises arguments for reconsideration the court ha[s] . . . already rejected on the merits." *Id*, *citing McLaughlin v. Holder*, 864 F. Supp. 2d 134, 141 (D.D.C. 2012).  The moving party bears the burden "to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." *Id.*, *citing Husayn v. Gates*, 588 F. Supp. 2d 7, 10 (D.D.C. 2008).

### *An "Ends of Justice" Continuance Was Not Required*

There is no basis to the defendant's mistaken argument (Dkt No. 42 at 6-12) that an "ends of justice" continuance under 18 U.S.C. § 3161(h)(7) was required for exclusion of time under 18 U.S.C. § 3161(h)(1).  The defendant misreads the Speedy Trial Act in making this argument. Section 3161(h) provides for certain periods of delay that "shall be excluded in computing the time within which an . . . indictment must be filed . . . ."  18 U.S.C. § 3161(h).  One of these "periods

---

[6] The "denial of a motion to dismiss on speedy trial grounds does not represent a 'complete, formal and, in the trial court, a final rejection' of the defendant's claim." *United States v. MacDonald*, 435 U.S. 850, 858 (1978).

of delay" is the "ends of justice" continuance identified at § 3161(h)(7), which requires that the

continuance be granted by a judge with findings.  But § 3161(h) contains numerous other subparts

that have nothing to do with the "ends of justice" continuance in §3161(h)(7).  These include each

of the subparts applicable here:

> (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to –
>
> . . .
>
> > (D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;
> >
> > (E) delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure; [and]
> >
> > (F) delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable.

18 U.S.C. § 3161(h)(1).

The Supreme Court precedent is clear that these periods of delay due to "other proceedings"

under § 3161(h)(1) are "automatically excludable [because] they may be excluded *without district

court findings*." *Bloate v. United States*, 559 U.S. 196, 203 (2010) (emphasis added).

The Supreme Court has also rejected the argument raised by the defendant (Dkt No. 42 at

16-17) that these "other proceedings" must actually cause delay or the expectation of delay in order

for them to be excludable delay under the Speedy Trial Act.  *See United States v. Tinklenberg*, 563

U.S. 647, 656 (2011) ("the subparagraphs that specifically list common pretrial occurrences apply

automatically . . ."); *id*. at 660 ("We disagree . . . that the Act's exclusion requires a court to find

that the event the exclusion specifically describes, here the filing of the pretrial motion, actually caused or was expected to cause delay of a trial. We hold that the Act contains no such requirement.").

The Court acknowledged this precedent from the Supreme Court and determined that periods of delay due to "other proceedings" are "automatically excludable because they may be excluded without district court findings." (Dkt No. 33 at 3-4, *citing Bloate*, 559 U.S. at 203). The Court also referred to the *Tinklenberg* case in support of the proposition that the "other proceeding" need not have caused any actual delay in order for the time period to be automatically excluded under the Speedy Trial Act. (*Id*.)

The defendant is completely mistaken to suggest that the government has sought an after-the-fact "ends of justice" continuance, or that the government should have sought such a continuance earlier. Our arguments in response to the defendant's motion to dismiss did not involve § 3161(h)(7) at all. The Court has already considered and rejected the defendant's arguments, and the defendant has failed to show that any harm or injustice would result if this request for reconsideration were not granted.

### Weekend Days and Holidays May be Excluded Under § 3161(h)(1)

The defendant incorrectly argues that "it is not appropriate to exclude weekend days or holidays from the Speedy Trial Act" (Dkt No. 42 at 12-17). The defendant's misunderstanding is based upon a misreading of *United States v. Tinklenberg*, 563 U.S. 647, 656 (2011).

The applicable part of the *Tinklenberg* decision does not remotely suggest that weekend days and holidays cannot be excluded from the time computations of the Speedy Trial Act. To the contrary, the *Tinklenberg* decision involved a situation where a pretrial motion was pending from

August 11, 2006, through August 14, 2006 (the date that the trial began), which included two weekend days (August 12 and 13), and the Supreme Court endorsed the exclusion of those weekend days when it determined that they are automatically excluded regardless of whether the pending motion caused actual delay.  563 U.S. at 651, 653-660.  *See also*, *Henderson v. United States*, 476 U.S. 321, 332 (1986) (affirming the exclusion of all the days from the filing of a motion to suppress on November 3, 1980, through January 14, 1982, due to a pending pretrial motion); *United States v. Rice*, 746 F.3d 1074, 1080 (D.C. Cir. 2014) (proper to exclude the "entire period" from June 2005 through January 2006 due to the pendency of a pretrial motion).  Nothing in the language of 18 U.S.C. § 3161(h) suggests in any way that weekend days and holidays cannot be excluded under any of its subparts.

The *Tinklenberg* decision also addressed the subpart of the Speedy Trial Act that excludes "delay resulting from transportation of any defendant from another district . . ., except that any time consumed in excess of ten days . . . shall be presumed to be unreasonable."  18 U.S.C. § 3161(h)(F).  Here, again, the Supreme Court affirmed that weekend days and holidays are among those excluded from the Speedy Trial Act calculation: "we believe the better reading of subparagraph (F) would include weekend days and holidays in its 10-day time period."  *Tinklenberg*, 563 U.S. at 662.

The issue that is apparently confusing the defendant is that the lower courts had applied Federal Rule of Criminal Procedure 45(a) in order to determine how to compute the ten days, and at the relevant time of the decision (but not presently), Rule 45(a) "excluded weekend days and holidays when computing any period of time specified in the 'rules,' in 'any local rule,' or in 'any court order' that was less than 11 days."  *Id*., 563 U.S. at 661.  The lower courts mistakenly

stretched out the 10 days (that were to be excluded under the Speedy Trial Act with no presumption

of unreasonableness) to 18 days, because the time period involved three weekends and two

holidays. *Id*. at 661. In the *Tinklenberg* decision, the Supreme Court held that Rule 45(a)'s method

of computing time did not apply to the Speedy Trial Act because, at the time, Rule 45(a) did not

expressly apply to statutory time periods. *Id*. at 661. Rule 45(a) has since been amended to apply

to statutory time periods as well, and also to count weekend days and holidays when calculating

all time periods unless otherwise specified. *Id*. at 662-63, Fed. R. Crim. P. 45(a). The defendant's

analysis is consequently off the mark, both back in the time of the *Tinklenberg* decision and

presently.

In short, there is no legal authority remotely supporting the defendant's view, and no basis

for reconsideration of the Court's prior orders.[7]

### No Doubt that the Defendant Tested Positive for COVID-19

The defendant baselessly reasserts that he was precluded from traveling on March 8, 2021,

because of a "made-up [medical] diagnosis," but presents no evidence at all to support this

---

[7] The defendant complains that the evidence submitted by the government about weather-related delays is "highly suspect," because: (a) the declaration of Kevin Wykert states that the defendant was "available" (rather than, as the defendant proposes, "scheduled") for a February 17, 2021, flight which was cancelled due to weather conditions; and (b) the cancellation of the February 17, 2021, flight was purportedly "in direct conflict" with the Will Rogers World Airport website information. In both instances, the defendant's linguistic semantics are unpersuasive. Merriam-Webster's dictionary defines "available" to mean, among other things, "present or ready for immediate use." This means that the defendant was ready and available for the flight, but that it was cancelled due to the weather conditions. The defendant's evidence from the Will Rogers World Airport website describes that on February 17, 2021, "another round of cancellations will slow air travel," and that, at the commercial airport, "[c]rews worked throughout the night to maintain the airfield, airport roadways, sidewalks and employee parking facilities." (Dkt No. 30, Exhibit 5 at 2.) The website also included that "crews may need to occasionally close the runway and associated taxiways to broom off snow flurries that are still falling" (*id*.). It was plainly "reasonable" under the conditions for JPATS to cancel the February 17, 2021, flight, as part of its obligations to ensure prisoner safety and security.

allegation.  The defendant's evidence instead supports that he tested positive for COVID-19 on March 7, 2021.[8]  The defendant provided to the Court his medical records from the Grady County Jail, and these records include a Report of COVID Testing indicating a positive test result on March 7, 2021 (Dkt No. 42, Exhibit 1 at 9, 18).  The documents provide detailed information about the testing process, including the time and date of sample collection and testing, and the signature of the person who performed the testing and collection (*id*. at 18).  These materials corroborate information that the government previously submitted, and that the Court relied upon in issuing its decision denying the motion to dismiss.

The defendant does not attempt to explain why reconsideration would be appropriate under these circumstances.  The Court has already considered the defendant's argument and rejected it. There can be no claim that justice requires reconsideration here, where there is no evidence supporting the defendant's claim of a "made-up diagnosis," and no reason to conclude that the Court made any error in its factual findings.  *Hemingway*, 930 F. Supp. 2d at 12.  The defendant bears the burden to show that an injustice would result if his request for reconsideration were denied, and this requirement has plainly not been satisfied here.

The defendant draws the Court's attention to purported "discrepancies" in the medical records that he obtained and submitted, including that: (a) a handwritten typo on a date appears to have been corrected; (b) the testing time on March 7, 2021, was at 3:00 a.m., 11 hours after the sample was collected which "seems [to the defendant] like a very odd time to review results"; (c) some pages of the records appear to feature a typed date at the bottom of the page of June 19, 2021, around a week after the defendant (through counsel) requested his medical records; (d) some pages

---

[8] The defendant previously admitted that he was informed of a positive test result at around the same time.  (Dkt No, 13, Exhibit A at 3.)

that have a blank line for a patient signature do not include a handwritten signature from the defendant; and (3) the March 7, 2021, testing appears to have been done "in-house" rather than by an outside laboratory.  (Dkt No. 42, Exhibit 1 at 18-19).

None of these observations by the defendant suggest in any way that his test result was falsified.  It was the defendant who submitted these materials in support of his request for reconsideration, and he seems to be asking the Court to allow him to discredit his own evidence. Nothing here indicates that the Court made any error in its factual findings.  In fact, the defendant is relying on bare speculation insufficient to meet the burden of proof that he carries.[9]

Finally, the defendant suggests that the Court should have held a live hearing with witness testimony rather than rely upon the exhibits presented by the parties, which the defendant describes as hearsay.  But the defendant fails to state any reason why live testimony subject to the hearsay rules was required.  The Federal Rules of Evidence, including the hearsay rules, do not apply to miscellaneous proceedings like this one.  Fed. R. Evid. 1101(d).  Similarly, a court is "not bound by evidence rules, except those on privilege," in deciding "preliminary questions."  Fed. R. Evid. 104.  *See, e.g., United States v. Koller*, 956 F.2d 1408, 1412-13 (7th Cir. 1992) (in a motion to dismiss under the Speedy Trial Act, the "district judge is not bound by the rules of evidence").

---

[9] There is no basis for an evidentiary hearing, but the evidence would show that none of these purported "discrepancies" cast any doubt on the test result, or on the reasonableness of the decision to cancel the defendant from the March 8, 2021, flight as a public health measure.  For some examples, counsel learned that Grady County Jail performed in-house testing for COVID-19 to prepare for upcoming flights, and it was not unusual to perform testing on weekends and at odd hours.  The June date printed on some of the pages was the date the record was last printed, after the request for records from the defense attorney.  The signature lines for patient signature on some nursing forms were defaults on the forms, and did not as a matter of policy actually require patient signatures.  In common human experience, correcting a typo on a handwritten form is not unusual. The defendant appears to have tested negative for COVID-19 upon arrival at the D.C. Jail (around 20 days after the collection was taken for the positive test result in Oklahoma), but the passage of time between the two tests eliminates any relevance.

"Decisions suggest that preliminary determinations made pursuant to the Speedy Trial Act should be accorded some deference." *Id.*, *see also United States v. Bourne*, 743 F.2d 1026, 1030-31; *United States v. McNeil*, 911 F.2d 768, 773-74 (D.C. Cir. 1990).

The defendant has not met his burden of proof to demonstrate that justice requires reconsideration, and so his motion should be denied.


Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793


By:        /MJF/
        Michael J. Friedman
        N.Y. Bar 4297461
        Assistant U.S. Attorney
        United States Attorney's Office
        555 Fourth St., NW
        Washington, D.C. 20001
        202-252-6765
        Michael.Friedman@usdoj.gov