UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,   .
                       .
        Plaintiff,     .  CR No. 21-0198 (TSC)
                       .
   v.                 .
                       .
TROY ANTHONY SMOCKS,    .  Washington, D.C.
                       .  Wednesday, September 29, 2021
        Defendant.    .  12:58 p.m.
. . . . . . . . . . . . . . . . .


TRANSCRIPT OF PLEA HEARING
BEFORE THE HONORABLE TANYA S. CHUTKAN
UNITED STATES DISTRICT JUDGE


<u>APPEARANCES</u>:

For the Government:         MICHAEL J. FRIEDMAN, AUSA
                          U.S. Attorney's Office
                          555 Fourth Street NW
                          Washington, DC 20530
                          (202) 252-7566


For the Defendant:          JOHN L. MACHADO, ESQ.
                          Law Office of John Machado
                          503 D Street NW
                          Suite 310
                          Washington, DC 20001
                          (703) 989-0840


Court Reporter:            BRYAN A. WAYNE, RPR, CRR
                          U.S. Courthouse, Room 4704-A
                          333 Constitution Avenue NW
                          Washington, DC 20001
                          (202) 354-3186


Proceedings reported by stenotype shorthand.
Transcript produced by computer-aided transcription.

1                    P R O C E E D I N G S

2                   (Via Videoconference)

3          THE DEPUTY CLERK:  Your Honor, we have criminal

4    action 21-198, United States of America versus Troy Smocks.

5    We have Mr. Michael Friedman representing the government

6    appearing by video, Mr. Smocks himself appearing by video,

7    Mr. John Machado appearing on behalf of the defendant.

8    Mr. Machado is in the courtroom.

9          THE COURT:  Good afternoon,everyone.

10      Mr. Smocks, can you hear me?

11          THE DEFENDANT:  Yes, ma'am, I can.

12          THE COURT:  Okay.  If at any point you can't hear

13   me, you need to raise your hand or otherwise indicate that you

14   can't hear me, because it's very important that you be able to

15   hear me and follow along because I'm going to be asking you a

16   lot of questions.

17      First of all, do the parties agree to proceed

18   by videoconference pursuant to the CARES Act and given the

19   current global pandemic?

20          MR. MACHADO:  Yes, Your Honor.  I would agree to

21   proceed this way.  I would note that before the Court was about

22   to enter, I was hoping to speak with Mr. Smocks.  He only --

23          THE COURT:  Well, since this is going to be a plea,

24   I suggest you do that.  I'll pass it for five minutes.

25      (Recess from 12:58 p.m. to 1:08 p.m.)

1          THE DEPUTY CLERK:  All right.  Recalling criminal

2     action 21-198, United States of America versus Troy Smocks.

3     All counsel are present, including the defendant.

4          THE COURT:  And just a reminder that it's prohibited

5     by federal and local rules to record any portion of this

6     proceeding or take any screenshots of the proceeding.

7        Mr. Smocks, can you hear me?

8          THE DEFENDANT:  Yes, ma'am.  I can hear you.

9          THE COURT:  Mr. Machado, I understand that

10    Mr. Smocks wishes to change his plea and enter a plea of

11    guilty.  Is that right?

12          MR. MACHADO:  That is correct, Your Honor.

13          THE COURT:  Mr. Smocks, have you pleaded guilty

14    in federal court before?

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  Okay.  Well, I don't how that judge did --

17    you may be familiar with some of the questions I'm going to ask

18    you.  My plea inquiry is fairly long.  Let's begin with -- I'll

19    have Mr. Bradley administer the oath to you.

20        (The defendant is sworn.)

21        Now, Mr. Smocks, you're now under oath.  I'm going to

22    ask you certain questions to make sure that you're competent

23    to plead guilty, that you understand your rights to a trial

24    and the rights that you're giving up by pleading guilty, and

25    that your plea is voluntary and knowing.

1   First, because your words are being transcribed, you

2 have to give audible answers, yes or no.  You can't nod your

3 head or shake your head, because the court reporter can't

4 take that down.

5   The first thing I want you to be aware of is, because

6 you're under oath, if you do not answer my questions truthfully,

7 you could be prosecuted for perjury or for making a false

8 statement, and any false answers you give here could be used

9 against you in that prosecution.  Do you understand?

10     THE DEFENDANT:  Yes, ma'am.

11     THE COURT:  Now, the purpose of the hearing today

12 is for you to make a decision.  You may have thought you've made

13 a decision, but you make the decision again after answering my

14 questions as to whether you want to go to trial on the

15 government's charges against you or whether you want to enter a

16 plea of guilty.

17   In order to make such an important decision, it's important

18 that you understand everything that's going on, and that's what

19 I'll be explaining to you here today.  If at any point you don't

20 understand my question, tell me and I'll try and explain it or

21 repeat it, or I'll let you talk to your lawyer so you can

22 discuss the question with your lawyer if you're not sure.

23   This is not going to be rushed.  I don't want you to

24 guess as to what you think the answer should be.  If you don't

25 understand the question, just let me know.  Do you understand?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Okay.  Now, what is your full name?

3          THE DEFENDANT:  Troy Anthony Smocks.

4          THE COURT:  And how old are you, Mr. Smocks?

5          THE DEFENDANT:  Fifty-nine.

6          THE COURT:  How far did you go in school?

7          THE DEFENDANT:  Half college, Your Honor.

8          THE COURT:  All right.  And I ask this of every

9  defendant simply because of the amount of paperwork involved:

10  Can you read and write?

11          THE DEFENDANT:  Yes, ma'am.

12          THE COURT:  Okay.  Now, I am not going to ask you

13  where you were born, but it is important for you to know that

14  if you are not a U.S. citizen, there are certain things that

15  may result from your pleading guilty here today.

16      If you're not a U.S. citizen, you may be deported, and

17  that would occur after you complete any sentence of incarceration.

18  And if you're not a citizen, your conviction could preclude

19  you from becoming a citizen in the future or from obtaining

20  permanent residence, if you seek permanent residence, or it may

21  result in your being excluded from reentering the United States.

22      Do you understand all of those consequences if you were not

23  born in the United States?

24          THE DEFENDANT:  Yes, ma'am, I do.

25          THE COURT:  Now, have you taken any alcohol or drugs

1    in the last 48 hours or any medicine that could affect your

2    ability to understand what you're doing by pleading guilty?

3                    THE DEFENDANT:  No, ma'am, I have not.

4                    THE COURT:  Have you receive any treatment recently

5    for any type of mental illness or emotional disturbance or

6    addiction to narcotic drugs of any kind?

7                    THE DEFENDANT:  No, ma'am, I have not.

8                    THE COURT:  Are you completely satisfied with

9    the services of your lawyer, Mr. Machado, in this case?

10                   THE DEFENDANT:  Yes, ma'am.

11                   THE COURT:  Have you had enough time to talk with

12   Mr. Machado and discuss the charges against you and the

13   government's plea offer and whether or not you should accept it?

14                   THE DEFENDANT:  Yes, ma'am.

15                   THE COURT:  Have you received a copy of the criminal

16   indictment against you; that is, the written charges against you

17   in this case?

18                   THE DEFENDANT:  Yes, ma'am, I have.

19                   THE COURT:  Have you read the charges and fully

20   discussed them and the case in general with Mr. Machado?

21                   THE DEFENDANT:  Yes, ma'am.

22                   THE COURT:  Mr. Friedman and Mr. Machado, do either

23   of you have any question as to Mr. Smocks' competence to plead

24   guilty at this time?  Mr. Machado.

25                   MR. MACHADO:  No, Your Honor.

1    THE COURT:  Mr. Friedman.

2    MR. FRIEDMAN:  No.

3    THE COURT:  All right.  Based on the answers that

4  have been provided here in open court, as well as my previous

5  observations of Mr. Smocks, I find that he is fully competent

6  and capable of entering an informed plea.

7    Now we move to the second phase, which is making sure you

8  understand the rights that you're giving up by pleading guilty.

9  Again, listen carefully.  Some of these questions are complicated.

10  If you need to talk to your lawyer or you need to ask a

11  question, just let me know.

12    You've been indicted by a grand jury on two counts of

13  Threats in Interstate Communication, in violation of 18 U.S.C.

14  § 875(c).  You have a right to plead not guilty and to have a

15  jury trial in this case.  That means that 12 citizens of the

16  District of Columbia would sit in this courtroom and determine

17  your guilt or innocence based on evidence presented in this

18  courtroom.  Do you understand your right to a jury trial?

19    THE DEFENDANT:  Yes, ma'am.

20    THE COURT:  If you had a trial, you would have the

21  right to be represented by your lawyer at that trial and at

22  every stage of the proceeding, and, if necessary, have the

23  Court appoint counsel for you.  Do you understand that right?

24    THE DEFENDANT:  Yes, ma'am.

25    THE COURT:  If you had a trial, you'd have the right,

1  through your lawyer, to confront and cross-examine any witness

2  against you.  Do you understand that?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  And if you had a trial, you would have

5  the right, if you wanted to, to present your own witnesses and

6  the right to subpoena them to require them to testify in your

7  defense.  You'd also have the right to testify and to present

8  evidence on your behalf if you wanted to.

9      Do you understand that?

10         THE DEFENDANT:  Yes, ma'am.

11         THE COURT:  You have to speak up, Mr. Smocks.

12         THE DEFENDANT:  Yes, ma'am.  The screen has gone

13 black, Your Honor.

14         THE COURT:  I can hear you now.

15     Do you also understand that you would not have to testify

16 or to present any evidence at the trial if you didn't want to,

17 because it is the government's burden to prove you guilty beyond

18 a reasonable doubt, and you cannot be forced to incriminate

19 yourself or present evidence of your own guilt and that your

20 decision not to testify or to present evidence could not be

21 used against you at trial.  Do you understand?

22         THE DEFENDANT:  Yes, ma'am.

23         THE COURT:  Now, unless and until I accept your guilty

24 plea, you are presumed by the law to be innocent because, as I

25 said, it's the government's burden to prove your guilt beyond a

1  reasonable doubt, and until it does, you cannot be convicted

2  at trial.  Do you understand that?

3           THE DEFENDANT:  Yes, ma'am.

4           THE COURT:  And if you went to trial and were

5  convicted, you would have a right to appeal your conviction to

6  the Court of Appeals and to have a lawyer help you prepare your

7  appeal.  Do you understand?

8           THE DEFENDANT:  Yes, ma'am.

9           THE COURT:  And by pleading guilty here, with the four

10 exceptions that I'm going to go over with you, you're giving up

11 all your rights to appeal your conviction of guilt in this case.

12 Do you understand?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  All right.  Now, under the plea agreement,

15 you're also giving up the right to appeal the sentence that I

16 give you.  Do you understand that?

17          THE DEFENDANT:  Yes, ma'am.

18          THE COURT:  And by "sentence" I mean any term

19 of imprisonment, fine, forfeiture, award of restitution, or

20 term of supervised release.  All those things come under the

21 term "sentence."  Do you understand?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  All right.  Now, here are the four

24 exceptions that I told you about.  The first is you still have

25 the right to appeal my sentence if I give you a sentence that

1  exceeds the statutory maximum.  That is, for example, if under

2  the statute that you're pleading guilty to the maximum sentence

3  is five years and I give you eight years, that's an illegal

4  sentence, and you can appeal my sentence.  I've gone above the

5  statutory maximum.  You understand?

6          THE DEFENDANT:  Yes.

7          THE COURT:  All right.  That's the first.

8      The second is you have a right to appeal the sentence if

9  you claim you received ineffective assistance from your lawyer.

10 Do you understand that?

11         THE DEFENDANT:  Yes, ma'am.

12         THE COURT:  And this is the third:  Under the plea

13 agreement, you're giving up the right to challenge your sentence

14 in what is called a collateral attack.  That is a challenge

15 that you file at the end of your criminal case by a habeas

16 corpus petition or a motion under the Rules of Civil Procedure.

17 So you're giving up that right to a collateral attack.

18     But -- and this is the exception -- you still have the

19 right to challenge your sentence if there is newly discovered

20 evidence; that is, new evidence that was not in the possession

21 or knowledge of the prosecutor or the defense here today or at

22 sentencing.  If there is newly discovered evidence, or like the

23 other two exceptions, I exceed the statutory maximum or you

24 claim ineffective assistance of counsel.  So those are three

25 exceptions.  The third is newly discovered evidence.

1      Do you understand?

2           THE DEFENDANT:  Yes, ma'am.

3           THE COURT:  And fourth, under the plea agreement,

4  you still have the right to file a motion under statute 18

5  U.S.C. § 3582(c)(2), which simply states that if the sentence

6  that I impose is based on the U.S. Sentencing Guidelines and

7  those guidelines are later changed to recommend a lower

8  sentencing range -- okay?  So today if I sentence you, and the

9  sentencing range is 10 to 20 months, say.  Right?  And a year

10 from then the range is lowered to, say, five to 10 months, you

11 have a right to file a motion with me, saying, Judge, the range

12 has been lowered; can you lower my sentence?

13     Do you understand that?  You still have that right.

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  However, if I deny your motion, you

16 don't have the right to appeal it.  Do you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Now, if you plead guilty in this case

19 and if I accept your guilty plea, you'll give up all the rights

20 to a trial and appeal that I explained except with those four

21 exceptions.  Do you understand?  There will be no trial.

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  Again, if you could just speak up a bit,

24 Mr. Smocks.

25          THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  All right.  Now, by pleading guilty to

2     a felony offense, you may later be deprived of valuable civil

3     rights such as the right to vote, the right to hold public

4     office, the right to serve on a jury, and the right to possess

5     a firearm.  Do you understand that?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  Having discussed all your rights with you

8     and the rights that you would be giving up, do you still want to

9     plead guilty in this case and give up your right to a trial?

10         THE DEFENDANT:  Yes, ma'am.

11         THE COURT:  Okay.  Now, your lawyer and the prosecutor

12    have given me a document called Statement of Offense that

13    describes what the government would be prepared to prove at

14    trial about your criminal conduct.  Now, this document is

15    important because it tells me what it is you agree you did,

16    and it is what I'm going to be referring to and looking at

17    when I decide your sentence.

18       Have you read this document and discussed it fully with

19    Mr. Machado?

20         THE DEFENDANT:  Yes, ma'am, I have.

21         THE COURT:  Is that your signature on the last page,

22    acknowledging that you have read the description of the criminal

23    conduct and fully understand it?

24         THE DEFENDANT:  Ma'am, the screen is black, so I can't

25    see anything.

1          THE COURT:  Oh, you can't see me?

2          THE DEFENDANT:  No, ma'am.

3          THE COURT:  Did that just happen?

4          THE DEFENDANT:  No, ma'am.  I alerted the Court about

5    five minutes ago that I couldn't see; the screen was black.

6          THE COURT:  Oh.

7          THE DEPUTY CLERK:  It's something with the D.C. jail.

8    I don't know what's going on.

9          THE COURT:  Mr. Machado, do you want to go forward

10   still?

11         MR. MACHADO:  If Mr. Smocks is comfortable.

12         THE COURT:  Mr. Smocks, are you comfortable

13   going forward only being able to hear me?

14         THE DEFENDANT:  Yes, ma'am.

15         THE COURT:  All right.  Well, let me know if that

16   changes.  Have you seen the document marked Statement of Offense?

17         THE DEFENDANT:  Yes, ma'am, I have.

18         THE COURT:  Did you sign it?

19         THE DEFENDANT:  Yes, ma'am, I did.

20         THE COURT:  By signing it, did you acknowledge

21   that you have read it and that you understood it?

22         THE DEFENDANT:  Yes, ma'am.

23         THE COURT:  And this is the important question:

24   Does the Statement of Offense truly and accurately describe

25   what you did in this case?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  On the morning of January 6, 2021, did

3    you send a threatening message on a social media site that was

4    seen by thousands of other social media users?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  And did that message contain a threat to

7    injure law enforcement officers?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  Did you travel from Texas to Washington,

10   D.C., on January 5 and return to Texas on January 7?

11         THE DEFENDANT:  Yes, ma'am.

12         THE COURT:  On the morning of January 6, when you sent

13   that threatening message, were you located in Washington, D.C.?

14         THE DEFENDANT:  Yes, ma'am.

15         THE COURT:  And did the message that you sent include

16   the following language:  "Many of us will return on January 19,

17   2021, carrying Our weapons, in support of Our nation's resolve,

18   to which the world will never forget"?

19         THE DEFENDANT:  Yes, ma'am.

20         THE COURT:  "We will come in numbers that no standing

21   army or police agency can match.  However, the police are NOT

22   Our enemy, unless they choose to be."  Did you write those words?

23         THE DEFENDANT:  Yes, ma'am, I did.

24         THE COURT:  On the evening of January 6, 2021, while

25   in Washington, D.C., did you send another electronic message on

1   a social media service?

2           THE DEFENDANT:  Yes, ma'am.

3           THE COURT:  And did that message include a threat

4   to injure politicians and technology company executives?

5           THE DEFENDANT:  Yes, ma'am.

6           THE COURT:  I'm sorry?

7           THE DEFENDANT:  Yes, ma'am.

8           THE COURT:  And did that message include the following

9   language:  "Today Eric Trump said that he would physically fight

10  with the Patriots to save Our country.  Today Representative

11  Mo Brooks asked the Patriots to pledge Our lives and wealth

12  to fight for Our country.  And today President Trump told us

13  to 'fight like hell.'  He said Our cause is a matter of national

14  security, and that these people behind the massive fraud must be

15  arrested and brought to justice.  And that task, falls on the

16  shoulders of We the People ... the American Patriots.

17      "So over the next 24 hours, I would say, let's get our

18  personal affairs in order.  Prepare Our Weapons, and then go

19  hunting.  Let's hunt these cowards down like the Traitors that

20  each of them are.  This includes, RINOS, Dems, and Tech Execs.

21  We now have the green light.  All who resist Us, are enemies of

22  Our Constitution, and must be treated as such."

23      Did the statements that you transmitted include that language?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  And were these messages sent for the

1    purpose of issuing threats?

2            THE DEFENDANT:  Yes, ma'am.

3            THE COURT:  And did your social media profile

4    falsely indicate that you were a retired military officer?

5            THE DEFENDANT:  Yes, ma'am.

6            THE COURT:  Mr. Friedman, do you wish to rely on your

7    Statement of Offense, or do you want to describe additional

8    evidence of the charges against Mr. Smocks?

9            MR. FRIEDMAN:  The Statement of Offense is sufficient,

10   Your Honor.

11           THE COURT:  Mr. Smocks, do you understand the charges

12   against you?

13           THE DEFENDANT:  Yes, ma'am.

14           THE COURT:  Okay.  Now, the parties have submitted a

15   written letter outlining the plea agreement.  Before we discuss

16   the terms of the agreement, let me ask you, Mr. Machado, does

17   this plea agreement reflect the only offer made to Mr. Smocks in

18   this case?

19           MR. MACHADO:  It does, Your Honor.

20           THE COURT:  All right.  Mr. Smocks, have you seen

21   the plea agreement letter between you and the government?

22           THE DEFENDANT:  Yes, ma'am.

23           THE COURT:  Do you have a copy of it?

24           THE DEFENDANT:  No, ma'am.

25           THE COURT:  Did you sign it?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Okay.  And did you read it carefully?

3          THE DEFENDANT:  Yes, ma'am, I did.

4          THE COURT:  Did you go over it with your lawyer?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  Have you had a chance that to discuss

7    any questions you might have about it with your lawyer?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  Do you understand it?

10         THE DEFENDANT:  Yes, ma'am.

11         THE COURT:  And have you had enough time to talk to

12   Mr. Machado about it?

13         THE DEFENDANT:  Yes, ma'am, I have.

14         THE COURT:  Okay.  Mr. Machado, could you summarize

15   the salient terms of the plea agreement?

16         MR. MACHADO:  Yes, Your Honor.  This is going to be

17   a plea agreement in which Mr. Smocks will be pleading guilty

18   to Count 1 of the indictment, which is Threats in Interstate

19   Communication, in violation of 18 U.S.C. § 875(c).  That is

20   Count 1 of the indictment, and the government will be dismissing

21   Count 2 of the indictment.

22      The maximum sentence is five years, a fine of $250,000

23   or twice the pecuniary gain or loss of the offense, a term

24   of supervised release of not more than three years, and an

25   obligation to pay any applicable interest or penalties or

1   fines on restitution not timely made, as well as a special

2   assessment of $100.

3        Other salient terms of it are that my client will be

4   agreeing to the factual stipulations, will cooperate with

5   additional investigation in that they will be able to access

6   his social media accounts in regard to this matter.

7        There has also been a sentencing guideline analysis that

8   the parties agree put him at a base level of 12, and that he is

9   accepting responsibility, thus getting his two-level reduction.

10       The parties have estimated, and it is an estimate, of a

11  criminal history category of three criminal history points,

12  but there is a possibility of six criminal history points.

13  So he is either in Category II or Category III, which would

14  put his estimated guideline range at 8 to 14 months or 10 to 16

15  months respectively.

16       The government is reserving step-back and reserving

17  allocution.  Mr. Smocks understands that our calculations are --

18  that the Court is not bound by this agreement or the sentencing

19  guidelines and that the calculation made by the presentence

20  report writer could arrive at a different amount of time on the

21  sentencing guidelines.

22       I think that covers enough salient points, but if I missed

23  anything or the Court has any questions...

24            THE COURT:  All right.  Mr. Smocks, you heard

25  Mr. Machado's description of the plea agreement.  Is that

1    what you agreed to?

2                THE DEFENDANT:  Yes, ma'am.

3                THE COURT:  Okay.  And you understand -- do you have

4    any confusion or any questions about the agreement that you'd

5    like to ask me or Mr. Machado about?

6                THE DEFENDANT:  No, ma'am.

7                THE COURT:  All right.  I accept that this plea

8    agreement is of the type authorized by Federal Rule of Criminal

9    Procedure 11(c)(1)(A) in that it specifies that Mr. Smocks will

10   not be further prosecuted criminally by the U.S. Attorney's

11   Office for the District of Columbia for the conduct set forth

12   in the Statement of Offense.

13       Now, Mr. Smocks, have you and your lawyer talked about

14   sentencing and the statute and how the sentencing guidelines

15   might apply to your case?

16               THE DEFENDANT:  Yes, ma'am, we have.

17               THE COURT:  Now, do you understand that if I accept

18   your guilty plea in this case, you could receive a maximum

19   sentence of five years of imprisonment?

20               THE DEFENDANT:  Yes.

21               THE COURT:  All right.  And it is important that you

22   understand, as I said, I cannot sentence you to more than the

23   statutory maximum term of imprisonment.  That would be an event

24   for which you could appeal.  At the beginning I said the one

25   exception was if I gave you a sentence above the statutory

1    maximum.  If I gave you seven years and the maximum is five,

2    you could appeal the sentence.

3                THE DEFENDANT:  Yes.

4                THE COURT:  You could also be subject to a period of

5    supervised release after any term of imprisonment that I impose,

6    and that means that if you're sent to prison, upon your release

7    you would be under the supervision of the probation office and

8    expected to follow their conditions and rules, and if you

9    violate any of those conditions, you could be sent back to

10   prison for more time.  Do you understand?

11               THE DEFENDANT:  Yes.

12               THE COURT:  I'm sorry?

13               THE DEFENDANT:  Yes, ma'am.

14               THE COURT:  Okay.  By statute, the maximum term

15   of supervised release is three years, and do you understand

16   that the maximum fine that you could receive is $250,000?

17               THE DEFENDANT:  Yes, ma'am.

18               THE COURT:  Do you understand that you will have

19   to pay a special assessment of $100 to the Clerk of the U.S.

20   District Court for a felony conviction?

21               THE DEFENDANT:  Yes, ma'am.

22               THE COURT:  And, actually, Mr. Machado -- hold on.

23   Is there a restitution provision?

24               MR. MACHADO:  Your Honor, there is no restitution.

25               THE COURT:  All right.  Just double-checking.  Okay.

1          MR. MACHADO:  And, Your Honor, just to be clear on

2    that point, the parties agree that the plus-four enhancement

3    that was suggested in the presentence report, since Mr. Smocks

4    was not part of what was happening at the U.S. Capitol, that

5    both the parties agree that that plus-four and any restitution

6    in that regard does not really apply in Mr. Smocks' case.

7          THE COURT:  Okay.  Now, in determining your sentence,

8    Mr. Smocks, I'm obligated to calculate and consider the applicable

9    sentencing range recommended in the guidelines manual for your

10   offense for a person with your criminal history.  Imposing a

11   sentence in accordance with the guidelines is no longer mandatory

12   as used to be the case, but I must still calculate and consider

13   the guideline range in every federal criminal case.

14       Have you and Mr. Machado talked about the sentencing

15   guidelines and how they might apply to your case?

16          THE DEFENDANT:  Yes, ma'am, we have.

17          THE COURT:  And do you understand that, even though

18   Mr. Machado and Mr. Friedman have done an estimate of what they

19   believe the guidelines range will be, that is not binding on me,

20   and I will not be able to determine the guideline range for your

21   case until after the presentence report is completed and you and

22   your lawyer and the prosecutor have had the chance to object to

23   any facts or conclusions of the presentence report?

24       Do you understand that?

25          THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  Now, the government and your lawyer have stated in the plea agreement what they believe your guideline range and your estimated guidelines sentence would be. Have you discussed that estimation with your lawyer?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And do you understand that the sentence that I impose may be different from what your lawyer or the government thinks it should be?  Do you understand?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Their estimate does not bind me. Similarly, whatever sentence the probation office recommends does not bind me.  Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  And that after I've decided what guideline applies to your case and what the advisory guideline range is, I will have the authority in some circumstances to impose a sentence that is more severe or less severe than the sentence recommended by the guidelines.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  And do you understand that you will not be able to withdraw your plea just because you don't like or agree with the sentence that I ultimately give you?

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  Now, in determining your

sentence, I have to consider certain factors set forth under

the guidelines in 18 U.S.C. § 3553(a), and I'll talk more about

those at sentencing.  But those factors that I must consider are

the nature and the circumstances of the offense and your history

and characteristics, the kinds of sentences available, the

sentencing guidelines that I've already talked about, the need

to avoid unwarranted sentence disparities among defendants with

similar records who have been found guilty of similar conduct,

the need to provide restitution to any victims of the offense,

and the need for my sentence to reflect the seriousness of the

offense, to promote respect for the law and to provide for just

punishment, to afford adequate deterrence to criminal conduct,

to protect the public from future crimes you may commit, and to

provide you with any needed educational or vocational training,

medical care, or other correctional treatment in the most

effective manner.

Do you understand I have to consider all those factors

in determining an appropriate sentence for you?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Now, in some limited circumstances,

the government may have the right to appeal my sentence.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Now, do you understand that parole has

been abolished for federal charges and that if I sentence you
to prison, you will serve the sentence that I impose, with a
possible reduction for good time of up to 54 days a year, and
that you will not be released early on parole as used to be the
case?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  And do you understand that if the
sentence ends up being more severe than you hoped or expected,
you'll still be bound by your plea, and you will have no right
to withdraw it?  You understand?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  And, Mr. Friedman, it's my
understanding that you will be requesting that Mr. Smocks
remain detained pending sentencing.  Is that correct?

MR. FRIEDMAN:  Yes, Your Honor.

THE COURT:  Now, Mr. Smocks, I'm going to ask you
a number of questions to make sure your plea is voluntary.

Has anyone forced, threatened, or coerced you in any way
into entering this plea of guilty?

THE DEFENDANT:  No, ma'am.

THE COURT:  Has anyone, including your lawyer,
the police, the prosecutor, or any other person you've come in
contact with since your arrest, promised or suggested to you
that just because you're pleading guilty I'll give you a lighter
sentence?

1          THE DEFENDANT:  No, ma'am.

2          THE COURT:  Do you understand that the agreement

3    reached in this case resulted from negotiations between your

4    lawyer and the government's lawyer?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  Has anyone made any promises to you in

7    connection with your guilty plea other than the ones contained

8    in the plea agreement or stated here in open court?

9          THE DEFENDANT:  No, ma'am.

10         THE COURT:  Other than what's stated in the plea

11   agreement, has anyone made any promises to you as to what

12   sentence I will give you if I accept your guilty plea?

13         THE DEFENDANT:  No, ma'am.

14         THE COURT:  Are you entering this plea of guilty

15   voluntarily and of your own free will because you are guilty?

16         THE DEFENDANT:  Yes, ma'am.

17         THE COURT:  Is there anything that you do not

18   understand about this proceeding or about your plea in

19   this case?

20         THE DEFENDANT:  No, ma'am.

21         THE COURT:  Is there anything you want to ask me

22   or your lawyer before you enter your plea?

23         THE DEFENDANT:  No, ma'am.

24         THE COURT:  Do you want to plead guilty or go to

25   trial in this case?

1      THE DEFENDANT:  I prefer to plead guilty, Your Honor.

2      THE COURT:  All right.  I am satisfied that Troy

3  Anthony Smocks is fully competent and capable of making a

4  decision today, that he understands the nature of the charges

5  and the consequences of the plea, that the plea of guilty is

6  knowing and voluntary, that he is acting of his own free will

7  in pleading guilty, and that there is an adequate factual basis

8  containing each of the essential elements of the offense for

9  the plea.

10      Therefore, I accept the guilty plea, and Mr. Smocks is

11  now adjudged guilty of Count 1 of the indictment, Threats in

12  Interstate Communication, in violation of 18 U.S.C. § 875(c),

13  and I'll sign and date the waiver of jury trial form.

14      Mr. Smocks, this is a form captioned Waiver of Trial

15  by Jury.  It states, "With the consent of the United States

16  Attorney and approval of the Court, the defendant waives his

17  right to trial by jury."  Did you sign that document, sir?

18      THE DEFENDANT:  Yes, ma'am.

19      THE COURT:  And by signing it, did you intend to give

20  up your right to a jury trial?

21      THE DEFENDANT:  Yes, ma'am.

22      THE COURT:  Okay.  Do the parties have a proposed --

23  Mr. Smocks will remain detained pending sentencing as the

24  parties agreed in his plea agreement.

25      MR. MACHADO:  Your Honor, in this case the Court had

previously ordered a presentence report to be prepared.  We have

received the preliminary version, and both the government and

the defense have already provided their objections.  So I don't

think a final one has been provided as of yet.

THE COURT:  I haven't gotten it.

MR. MACHADO:  So it is Mr. Smocks' desire to move to

sentencing as soon as possible.  And just to note, Your Honor,

that based on some of our calculations within our agreement,

the government is agreeing to ask for the lower end of the

guideline, and if it is calculated that he is in Category II,

he is already past serving that.

So our request is one of -- a reasonable one, I would

respectfully say.  But, nevertheless, we would ask for the

Court to provide him with the earliest possible sentencing

date given how much has transpired since then.

THE COURT:  All right.  Let's set a sentencing date.

Mr. Smocks, you'll be allowed to speak at your sentencing

if you wish.  Your lawyer will have an opportunity to speak for

you, and the government will have an opportunity to speak on

behalf of the government.

Mr. Bradley, what are we looking at?

THE DEPUTY CLERK:  Yes, Your Honor.  I emailed the

probation office, and they won't have the final report until

October 4.  And looking at the D.C. jail, the earliest time

that we could have this hearing is October 18 at 12:30.

1          THE COURT:  Okay.  Let's see.

2          MR. MACHADO:  That's your earliest available?

3          THE COURT:  Yes.  Between getting the presentence

4    report and then the jail scheduling, the jail has now fewer

5    rooms available.

6          THE DEPUTY CLERK:  You just have two pleas at nine

7    o'clock that morning, Judge.

8          THE COURT:  Yes.  We could do this at -- we could

9    try and do it at 11:30.  No?

10          THE DEPUTY CLERK:  12:30.

11          MR. MACHADO:  I'm available, Your Honor.

12          THE COURT:  Okay.  Let's do it at 12:30.

13          MR. MACHADO:  Your Honor, there's one thing that

14    I just wanted to clarify.  I was waiting for an opening as

15    far as the colloquy.

16       At one point Your Honor asked whether he falsely indicated

17    that he was a retired military officer.  He is actually -- he

18    indicated he was a colonel, but he did retire from the military.

19    So just to clarify, he admits that he was not a colonel but that

20    he did -- was part of the military.

21          THE COURT:  Okay.  And you can address it at

22    sentencing as well.

23          MR. MACHADO:  Thank you, Your Honor.

24          THE COURT:  All right.  Sentencing will be at 12:30

25    on October 18.  Please have all sentencing materials to me a

1    week before sentencing.

2         Is there anything else that I need to address today?

3              MR. MACHADO:  No, Your Honor.  Thank you.

4              MR. FRIEDMAN:  No, Your Honor.

5              THE COURT:  All right.  Thank you.

6         Mr. Smocks, I will see you on October 18 at 12:30.

7         Thank you all.

8         (Proceedings adjourned at 1:41 p.m.)

* * * * * *

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.

*/s/ Bryan A. Wayne*
Bryan A. Wayne