IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TROY ANTHONY SMOCKS,<br><br>             Defendant. | CRIMINAL NO. 21-cr-00198 (TSC) |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing.

### BACKGROUND

The defendant was charged by indictment on March 9, 2021, with two violations of 18 U.S.C. § 875(c) (threats in interstate commerce) (Dkt No. 8). On September 29, 2021, the defendant pleaded guilty to count one of the Indictment, pursuant to a plea agreement (Dkt No. 54) in which the United States agreed to dismiss the remaining charge at the time of the sentencing. Sentencing is scheduled for October 21, 2021.

At the plea hearing, the defendant admitted that he travelled from Texas to the Washington, D.C., area on January 5, 2021, the day before a joint session of the United States Congress was scheduled to certify the vote count of the Electoral College of the 2020 Presidential Election (Dkt No. 53 at 1). On the morning of January 6, 2021, while located in Washington, D.C., the defendant sent a threatening electronic message on a social media service that reached tens of thousands of users, from an account that falsely purported to identify the defendant as a retired military officer

(*id*. at 3). The message contained a threat to injure law enforcement officers, and included the following among other language:

> Today, January 6, 2021, we Patriots by the millions, have arrived in Washington, D.C., carrying banners of support for the greatest President the world has ever known.
>
> Bit [sic] if we must . . .
>
> Many of us will return on January 19, 2021, carrying Our weapons, in support of Our nation's resolve, towhich [sic] the world will never forget!!!
>
> We will come in numbers that no standing army or police agency can match. However, the police are NOT Our enemy, unless they choose to be!
>
> All who will not stand with the American Patriots . . . or who cannot stand with Us . . . then, that would be a good time for YOU to take a few vacation days.
>
> The American Patriot.

(*Id*. at 3-4.)

Later that afternoon, a large crowd gathered outside the U.S. Capitol Building and individuals illegally forced their way into the building. A riot ensued that resulted in temporary suspension of the Congressional proceedings, which did not resume until later that evening.

On the evening of January 6, 2021, after the U.S. Capitol Building was secured from the earlier rioting, the defendant sent another threatening message on the social media service. The message was again viewed by tens of thousands of other users and was sent from a social media account that falsely purported to identify the defendant as a retired military officer. The message threatened to injure politicians and technology company executives, and included the following among other language:

> Today Eric Trump said that he would physically fight with the Patriots to save Our country. Today Representative Mo Brooks asked the Patriots to pledge Our live [sic] and wealth to fight for Our country. And today President Trump told of

> [sic] to "fight like hell". He said that Our cause was a matter of national security, and that these people behind the massive fraud must be arrested and brought to justice. And that task, falls on the shoulders of We The People . . . the American Patriots.
>
> So over the next 24 hours, I would say, lets get our personal affairs in order. Prepare Our Weapons, and then go hunting. Lets hunt these cowards down like the Traitors that each of them are. This includes, RINOS, Dems, and Tech Execs. We now have the green light. [All] who resist Us, are enemies of Our Constitution, and must be treated as such.
>
> Today, the cowards ran as We took the Capital. They have it back now, only because We left. It wasn't the building that We wanted . . . it was them!

(Dkt No. 53 at 4-5.)

The defendant admitted at the plea hearing that he sent the electronic messages on the social media service for the purpose of issuing threats, and with knowledge that his communications would be viewed as threats. (Dkt No. 53 at 5.)

## ARGUMENT

### I.      Statutory Penalties

The statutory maximum penalty for a violation of 18 U.S.C. § 875(c) includes up to five years of imprisonment; a fine of up to $250,000 or twice the pecuniary gain or loss of the offense pursuant to 18 U.S.C. § 3571; and a term of supervised release of up to three years pursuant to 18 U.S.C. § 3583(b)(2).

### II.     Application of the Sentencing Guidelines

The Sentencing Guidelines provide advisory recommendations which the courts "must consult . . . and take . . . into account when sentencing," *United States v. Booker*, 543 U.S. 220, 264 (2005), a criminal defendant for violations of the United States Code. As the Supreme Court has explained, "[a]s a matter of administration and to secure nationwide consistency, the

Sentencing Guidelines should be the starting point and the initial benchmark" in for determining the appropriate sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007).

The parties agreed at the plea hearing that the following Sentencing Guidelines sections apply. First, the base offense level under U.S.S.G. § 2A6.1 was 12. Second, two points should be deducted for acceptance of responsibility under U.S.S.G. § 3E1.1, for a total Estimated Offense Level of 10.[1]

The parties also agreed that the defendant has an estimated Criminal History Category of either II or III, depending upon whether a prior felony conviction from the State of Missouri (Case Number CR199022003) involved a term of incarceration that extended into the previous 15-year period before commission of the January 6, 2021, offense. *See* U.S.S.G. § 4A1.2(e).[2]

---

[1] The Final Presentence Report indicates that a four-level increase could be appropriate under U.S.S.G. § 2A6.1(b)(4) "if the offense resulted in (A) substantial disruption of public, governmental, or business functions or services, or (B) a substantial expenditure of funds to clean up, decontaminate, or otherwise respond to the offense." The United States does not take the position that this provision is applicable. The defendant's first social media post from January 6, 2021, was sent prior to the beginning of the riot, and made a threat about conduct to occur on January 19. The defendant's second social media post from January 6, 2021, was sent after the riot had concluded.

[2] The Final Presentence Report indicates that the term of incarceration for the Missouri offense did not extend into the previous 15-year period because records from the Jackson County, Missouri, Department of Corrections show that the defendant was released from custody for that offense on October 3, 2003. Review of the online docket for the Missouri offense indicates that after an earlier failure to appear, the defendant was sentenced on or around October 3, 2003, to a multi-year term of imprisonment. It appears that that the defendant was in the custody of the State of Missouri in February 2005 when he was charged in the Eastern District of Texas in Case Number 4:05-cr-00012 (*see* Exhibit A). And the defendant's sentence in Case Number 4:05-cr-00012 (imposed on March 21, 2006), was ordered to be served consecutively to the sentence for the Missouri offense (*see* Exhibit B). Counsel for the United States is unable to further confirm whether the term of incarceration for the Missouri offense extended into the 15-year period before January 6, 2021.

The parties agreed that the Estimated Guidelines Range is either 8-14 months of imprisonment (if Criminal History Category II) or 10-16 months of imprisonment (if Criminal History Category III). The parties also agreed that the estimated applicable fine range is $4,000 to $40,000.

### III. Statutory Sentencing Factors

As noted above, determining the recommended sentencing range under the U.S.S.G. is the first of two required steps for sentencing under the United States Code. The second step requires the court to consider that range, to consider other relevant factors set forth in the guidelines, and to consider the factors set forth in 18 U.S.C. § 3553(a). *See, e.g., United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). These factors include (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and provides the defendant with needed educational or vocational training and medical care; and (4) the need to avoid unwarranted sentence disparities among defendants with similar records convicted of similar conduct.

#### 1. Nature and Circumstances of the Offenses

The defendant committed a serious federal criminal offense by disseminating threatening statements on a social media service. The seriousness is compounded when one considers that: the defendant falsely purported to be a retired military officer; made the threats in a time of significant national tension regarding Constitutionally-mandated procedures for our democratic

process; and made multiple threatening statements in the same day targeting different groups of perceived enemies.[3]

### 2. History and Characteristics of the Offender

The defendant has a lengthy criminal history, with approximately 18 prior criminal convictions spanning from the early 1980s to 2006. Prior offenses include: production of fraudulent identification documents, bank fraud, forgery, stealing, multiple instances of falsely impersonating a federal agent, theft, offering a forged check, resisting an officer, larceny, auto theft, and unlawful use of a credit card. The defendant also has a lengthy history of violating probation and supervised release conditions, with numerous revocations and failures to appear in his criminal history.

The vast majority of the defendant's criminal convictions occurred more than 20 years ago, and he appears to have successfully completed a term of supervised release in 2019. The defendant

---

[3] As we have previously explained (Dkt No. 22 at 3 n.2), the defendant made numerous other concerning social media posts in the weeks leading up to January 6, 2021, from the same social media account falsely purporting to identify the defendant as a retired military officer. These included, among others: "[I]t's time to physically bite them, while there is still enough of us to form a strong resistance" (November 4, 2021); "The time has come to ready ourselves for an offensive stance against the Democratic Antifa Army. . . . Only the brute force of the men and women of this national can defeat this enemy who has envaded (sic) ours country (our home)" (November 15, 2020); "Why Have A Second Amendment If You're Afraid To Exercise it??? . . . The United States Constitution is under seize. Put Your Guns Where Your Mouth Is. Lets Stop The Steal." (November 24, 2020); "There is roughly 800,000 federal agents, and less than 250 Traitor Democrat members in D.C. . . . There are over 70 million of Us. We can take them!!!" (November 28, 2020); "Its time for America to put its money where its mouth has been. Will it get bloody, yes. But freedom ain't free." (December 11, 2020); "Ok. So the U.S. Supreme Court has just told 174 million voters to fuck off!!! So, since the Constitution is no longer the rule of law, then there IS no law . . . until We take our country back . . . So I guess all of the talking is over. Its Patriot Time!" (December 11, 2020). The defendant also posted a YouTube video in 2020 where he appeared in military-style clothing and urged veterans to participate in armed protests.

also has some history of employment and a high school equivalency degree. In this case, the defendant accepted responsibility for his conduct by pleading guilty.

### 3. Need to Promote Respect for the Law, to Provide Just Punishment, to Afford Adequate Deterrence, and to Protect the Public

The sentence must send a message to the defendant and the public that social media threats to cause injury to others will not be tolerated. The sentence must also adequately punish the defendant for his offense. In the unique circumstances of this case, a term of imprisonment at the low end of the Sentencing Guidelines range will accomplish these sentencing goals. Additionally, the imposition of a three-year term of supervised release will provide additional deterrence and protection to the public for years to come.

### 4. Educational or Vocational Training or Medical Care

A three-year term of supervised release should require that the defendant participate in mental health evaluation and treatment, and in a vocational training program that will require continuous employment. These requirements will serve core sentencing goals and help ensure successful reentry.

### 5. Need to Avoid Unwarranted Sentencing Disparities

A sentence at the low end of the Sentencing Guidelines range will ensure that the defendant is not subject to an unfairly disparate sentence.

**V.     Conclusion**

For these reasons, and considering all the unique circumstances of this case, we respectfully suggest that the Court impose a term of imprisonment at the low end of the Sentencing Guidelines range, followed by three years of supervised release with conditions.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By:        /MJF/
Michael J. Friedman
N.Y. Bar 4297461
Assistant U.S. Attorney
United States Attorney's Office
555 Fourth St., NW
Washington, D.C. 20001
202-252-6765
Michael.Friedman@usdoj.gov