IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIM NO. 21-CR-198-TSC |
| TROY ANTHONY SMOCKS, | ) | Judge: Chutkan |
| | ) | |
| Defendant. | ) | Sentencing Date: 10/21/21 |

### DEFENDANT TROY SMOKS MEMORANDUM IN AID OF SENTENCING

COMES NOW Troy Anthony Smocks, by and through counsel, and submits the following memorandum in aid of sentencing.

### Background

On January 15, 2021, Mr. Smocks was arrested in his home residence in Texas. He has been detained since his arrest. Mr. Smocks had a considerable delay in arriving to Washington, DC, which finally occurred approximately March 25, 2021. During the process, Mr. Smocks was located several weeks in the Grady County Law Enforcement Center in Oklahoma. During his time at the Grady County Law Enforcement Center, Mr. Smocks contracted COVID, which was part of the reason for delay in his arrival to the District of Columbia.[1] The defendant

---

1 The issue of whether Mr. Smocks actually tested positive for COVID was the subject of prior litigation in this matter regarding speedy trial issues. However, for purposes of this memorandum, the court has accepted the representations of the government and, accordingly, the record stands that Mr. Smocks contracted COVID while at

1

was indicted on March 9, 2021, on two counts of Threats in Interstate Commerce, in violation of 18 U.S.C. § 875(c). On September 29, 2021, the defendant, pursuant to a plea agreement, pleaded guilty to Count One of the Indictment. The plea agreement also provides for the dismissal of Count Two of the indictment. (Dkt. No. 54). In addition, the government has agreed to allocate for the lower end of the sentencing guidelines. *Id.* at 4. Sentencing is scheduled for October 21, 2021.

## Argument

### A. Statutory Penalty

The penalty for a violation of one count of 18 U.S.C. § 875(c) includes a) five years of imprisonment; b) a fine of up to $250,000 or twice the pecuniary gain or loss of the offense pursuant to 18 U.S.C. § 3571; and c) a term of supervised release of up to three years pursuant to 18 U.S.C. § 3583(b)(2).

### B. Sentencing Guideline Calculations

Under the plea agreement, the parties agreed to a base level offense of 12. Due to his acceptance of responsibility, a two-level reduction under USSG § 3E1.1 was appropriate, thus making Mr. Smocks' level 10. No additional adjustments were made within the level of offense within the plea agreement.

Regarding his criminal history, the parties, in the plea agreement,

---

the Grady County Law Enforcement Center.

acknowledge that Mr. Smocks had either a criminal history of either 3 or 6 criminal history points. Accordingly, the parties agreed that depending on the analysis by the Pretrial Services Report, the criminal history Category would either be Criminal History Category II or III, respectively. Therefore, with the Criminal History Category being II or III, the parties also estimated that the guideline range would be either 8-14 months or 10-16 months, respectively.

On October 4, 2021, the probation office filed its final Presentence Report (PSR) in this case. (Dkt. No. 55). In that report, the Criminal History Score was determined to be 3, thus placing Mr. Smocks in Criminal History Category II. *Id.* at ¶ 51. As to the offense level, the PSR report writer added 4 additional points pursuant to USSG § 2A6.1(b)(4). *Id.* at ¶ 20. Accordingly, the PSR determined that Mr. Smocks' Total Offense Level, with the additional four points added and one additional point subtracted, was a total of 13. *Id.* at ¶ 28. Thus, with the Criminal History of II and a Total Offense Level of 13, the PSR came to a sentencing range of 15 to 21 months. *Id.* at ¶ 90.

Pursuant to discussions with government counsel, it is the position of both parties that the four point increase pursuant to USSG § 2A6.1(b)(4) is not applicable in this case. USSG § 2A6.1(b)(4) states that "If the offense resulted in (A) substantial disruption of public, governmental, or business functions or

3

services; or (B) a substantial expenditure of funds to clean up, decontaminate, or otherwise respond to the offense, increase by **4** levels." Besides the position of the parties, there are multiple reasons it should not apply. First, the reason that it does not apply is because Mr. Smocks' threats are not related to the January 6th riots at the U.S. Capitol for multiple reasons: a) Mr. Smocks' threat in Count 1 was a threat which was made in the morning prior to the riots; b) Mr. Smocks did not participate in the riots in any way, and did not even go onto the U.S. Capitol grounds; c) the threats made are references to returning on January 19th (where there ended up not being any riots), and not on January 6th. Furthermore, Count 2, which was dismissed, was made after the incidents of January 6th.

Second, there are additional reasons that the court cannot add the additional four levels. In United States v. Bourquin, 966 F.3d 428 (6th Cir. 2020). In Bourquin, the government sought the four-level enhancement of USSG §2A6.1(b)(4). The appellate court vacated the sentence and remanded the case. Its reasoning for doing so was as follows:

> The district court applied the enhancement even though the government did not introduce any accounting of funds expended. Because we conclude that § 2A6.1(b)(4)(B) requires more, such as a full accounting of expenditures or some accounting of expenditures coupled with facts that allow a sentencing court to reasonably assess the full expenditure of funds required to respond to an offense and whether those funds are substantial, we vacate the sentence imposed by the district court and remand for resentencing consistent with this

4

opinion. Bourquin, at 429-30.

*See also* United States v. Nissen, 492 F. Supp. 3d 1254, 1281 (D.N.M. 2020) ("The United States has introduced no evidence of any expenditures that [New Mexico] State Police or any other law enforcement agency expended responding to Nissen's threats. Further, the PSR provides no such evidence or information from which the Court can conclude, by a preponderance of the evidence, that § 2A6.1(b)(4)(B) applies.")

In the present case, the government has indicated that it does not seek the four-level enhancement. Also, as discussed above, neither of the threats that are mentioned in the plea agreement are related to the damage that occurred on January 6th. Also, the government has not presented any evidence of damages (nor has shown any intention to do so). Accordingly, this court should not provide the four-level enhancement, as it is not permitted to do so on the present record. Therefore, the proper guideline range is Criminal History Category II and base level offense 10, leading to a 8-14 month sentencing range, as agreed upon by the parties originally in the plea agreement.

**C. Statutory Sentencing Factors**

As this court knows, in United States v. Booker, 543 U.S. 220, 264 (2005), the Supreme Court indicated that sentencing courts should "consult [the

Sentencing] Guidelines and take them into account when sentencing." Booker further indicated that the purpose of the guidelines was to "'provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities[.]'" *Booker*, 543 U.S. at 264 (quoting 28 U.S.C. § 991(b)(1)(B)).

Given the factors under 18 U.S.C. § 3553(a), this court should consider the following: (1) the nature and circumstances of the offense; (2) the defendant's history and characteristics; (3) the need to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and provides the defendant with needed educational or vocational training and medical care; and (4) the need for the sentence to avoid unwarranted disparities among defendants with similar records convicted of similar conduct. *See* 18 U.S.C. § 3553(a).

**1. Nature and Circumstances of the Offenses**

Mr. Smocks pled guilty to one threat. Mr. Smocks' threats were not directly related to the January 6th matter. His threats were on a social media site, which has First Amendment implications, although Mr. Smocks readily admitted that his statements were beyond what was noncriminal conduct. His threats did not refer to any specific person and merely referred to generalized groups. Further, his intent to

not personally follow through with the threats is supported by the fact that, as indicated in his Statement of Facts, as Mr. Smocks had an airline reservation to leave the country on January 15 with a return flight on January 24, 2021.

### 2. The Defendant's History and Characteristics

With regard to Mr. Smocks' history and characteristics, Mr. Smocks' criminal history is very dated, the last incident occurring about 20 years ago, which actually ended in a dismissal. His most recent period of supervised release ended successfully in 2019. He is recently married and has had the support of his extended family during his time in jail. He has a GED and has various types of employment, including owner of a biohazard company, online currency trader, and author. He is hoping to return back to Missouri to reside alongside his extended family.

### 3. Need to Promote Respect for the Law, to Provide Just Punishment, to Afford Adequate Deterrence, and to Protect the Public

Mr. Smocks has been detained for over approximately 9 months incarcerated. These months have been unusually harsh, as they have occurred entirely during the pandemic, which means that Mr. Smocks was required to be in his cell for 23 hours a day in his time in the District of Columbia Jail. Furthermore, he contracted COVID-19 while he has been incarcerated, a further harsh (though

unintentional) punishment that Mr. Smocks had to survive through. These months further separated from his family, particularly his wife, have made this experience one that Mr. Smocks never wants to replicate. Mr. Smocks has no intention of duplicating this illegal conduct in any way. Accordingly, the public will be safe from any acts on his part, as he has no intention of using social media the way he had done in the past.

also has a history of employment and a high school equivalency degree. In this case, the defendant accepted responsibility for his conduct by pleading guilty.

### 4. Educational or Vocational Training or Medical Care

Mr. Smocks was an author, a day trader, and an owner of his own company prior to his arrest. He has his GED. He is not in need of any further educational or vocational training, so his need to receive such training at this time. He does not believe he needs additional medical care, either physically health-wise or mental health-wise.

### 5. Need to Avoid Unwarranted Sentencing Disparities

The sentence of time served , which is just under 9 months, would be one that would be appropriate and even beyond the request made by the government. As this is the appropriate sentence guidelines (as argued), it is in the proper guideline range and does not create a sentencing disparity.

Finally, Mr. Smocks, because of his actions in this matter, have placed him on the "No-Fly" List. Mr. Smocks respectfully requests that this court issue an order removing him from the No-Fly List, as it has already caused him and continues to cause him unnecessary trouble.

WHEREFORE, for the reasons stated above, Defendant Troy Smocks respectfully requests for a sentence of time served, which would be the equivalent of over nine (9) months.

Respectfully submitted,

TROY ANTHONY SMOCKS
By Counsel

\_\_\_/s/ John L. Machado_____
John L. Machado, Esq.
Bar No. 449961
Counsel for Troy Anthony Smocks
503 D Street, N.W., Suite 310
Washington, DC 20001
Telephone: (703) 989-0840
E-mail: johnlmachado@gmail.com


## Certificate of Service

I hereby certify that a true copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system this 18th day of October, 2021, which will send a notification of such filing (NEF) to the following to all counsel of record.

    /s/John L. Machado
John L. Machado, Esq.
Bar Number 449961
Attorney for Troy Anthony Smocks
Law Office of John Machado
503 D Street NW, Suite 310
Washington, D.C. 20001
Telephone (703)989-0840
Email: johnlmachado@gmail.com