**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL NO. 21-cr-00198 (TSC)** |
| **TROY ANTHONY SMOCKS,** | |
| **Defendant.** | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO
MOTION TO CORRECT SENTENCE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in opposition to defendant Troy Anthony Smocks' motion to correct sentence under Federal Rule of Criminal Procedure 35(a) (Dkt No. 64). The motion should be denied because there is no legal or factual basis to grant the relief the defendant seeks.

**BACKGROUND**

The defendant was charged by indictment on March 9, 2021, with two violations of 18 U.S.C. § 875(c) (threats in interstate commerce) (Dkt No. 8). On September 29, 2021, the defendant pleaded guilty to count one of the indictment. The defendant was sentenced on October 21, 2021, to a 14-month term of imprisonment, to be followed by 36 months of supervised release.

The guilty plea was made pursuant to a plea agreement signed by the defendant on September 13, 2021, in which the parties agreed to applicable sentencing guidelines provisions (Dkt No. 54 at 2-4, 11). The plea agreement specifically contemplated a base offense level of 12, pursuant to U.S.S.G. § 2A6.1 (threatening or harassing communications) (*id*. at 2). It did not state

or suggest that U.S.S.G. § 2A6.1(b)(6) applied.  (U.S.S.G. § 2A6.1(b)(6) results in a decrease to the base offense level by four points if none of the specific offense characteristics in § 2A6.1(b) apply, and if "the offense involved a single instance evidencing little or no deliberation").  To the contrary, the parties "agree[d]" that the base offense level was 12 (*id*. at 2).  The parties "also agree[d] that neither party will seek any offense-level calculation different from the Estimated Offense Level calculated" in the plea agreement (*id*. at 4).[1]

The defendant submitted his objections to the draft Presentence Investigation Report ("PSR") on September 27, 2021 (prior to the plea hearing), and for the first time indicated his belief (contrary to the plea agreement he had signed two weeks earlier) that U.S.S.G. § 2A6.1(b)(6) should apply and result in a decrease of four-levels to the base offense level.  (Exhibit A at 2).[2] On the morning of September 29, 2021 (shortly before the plea hearing scheduled for later that afternoon), counsel for the United States spoke with the defense attorney by phone and stated that it may be a breach of the plea agreement for the defendant to take the position that U.S.S.G. § 2A6.1(b)(6) applied, as the parties had already agreed on the applicable sentencing guidelines

---

[1] The defendant acknowledged in the plea agreement that it would be a breach of the agreement if he "fail[ed] specifically to perform or to fulfill completely each and every one of [his] obligations" under the plea agreement (Dkt No. 54 at 9).  Consequences of a breach of the plea agreement were expressly stated to include that the government would be "free from its obligations" under the plea agreement, that the defendant would be "fully subject to criminal prosecution for any other crimes", and that in a subsequent criminal prosecution the government would be free to use the defendant's statements during the plea proceedings against him (*id*. at 9).

[2] The parties had received the draft Presentence Investigation Report ("PSR") on September 7, 2021 (prior to the date the defendant signed the plea agreement) (Dkt No. 51).  The draft PSR indicated that the base offense level was determined by U.S.S.G. § 2A6.1 (12 points), and there was no suggestion that four points should be deducted under U.S.S.G. § 2A6.1(b)(6) (Dkt No. 51 at 5).  The draft PSR (and the final PSR) indicated that a four-level increase could be appropriate under U.S.S.G. § 2A6.1(b)(4) "if the offense resulted in (A) substantial disruption of public, governmental, or business functions or services, or (B) a substantial expenditure of funds to clean up, decontaminate, or otherwise respond to the offense."  (Dkt No. 51 at 5.)  The parties agreed that this provision did not apply, however, and the Court ultimately did not apply the provision at sentencing.

provisions in the signed plea agreement.[3]  The defense attorney stated on the phone call that he would speak with the defendant about dropping the request that U.S.S.G. § 2A6.1(b)(6) be applied.

At the plea hearing on the afternoon on September 29, 2021, the defendant testified under oath that he had read the plea agreement carefully, understood it, discussed it with his attorney, and signed it (Ex. B at 16-17).  The defendant agreed again at the plea hearing that the base offense level under the sentencing guidelines was 12, and there was no suggestion by anyone that U.S.S.G. § 2A6.1(b)(6) would apply resulting in a four-point decrease (*id*. at 18-19).

Also, at the plea hearing, the defendant admitted that on January 6, 2021, he had used a social media account to send two separate electronic messages (one in the morning and the other in the evening) that contained threats to injure law enforcement officers, politicians, and technology company executives (Exhibit B at 13-16; Dkt No. 53).  The defendant admitted that he sent the electronic messages on the social media service for the purpose of issuing threats, and with knowledge that his communications would be viewed as threats (Exhibit B at 13-16; Dkt No. 53 at 5.)[4]

The final PSR was issued on October 4, 2021, and, like the draft PSR, it indicated that the base offense level was determined by U.S.S.G. § 2A6.1 (12 points), with no suggestion that four points should be deducted under U.S.S.G. § 2A6.1(b)(6) (Dkt No. 55 at 7).[5]

---

[3] Counsel for the United States added that it would be permissible under the terms of the plea agreement for the defense attorney to argue for a variance at sentencing using the factors laid out in 18 U.S.C. § 3553.  *See* Dkt No. 54 at 4.

[4] The defendant also admitted at the plea hearing that he had made an airline reservation to depart the United States on January 15, 2021, and that he had cancelled the airline reservation the evening before he was scheduled to depart (Dkt No. 53 at 5; Exhibit B at 13-14).

[5] The addendum to the final PSR made no mention of the defendant's earlier objection that U.S.S.G. § 2A6.1(b)(6) should be applied, suggesting that the defendant may have notified the PSR writer that the objection was withdrawn. (Dkt No. 55 at 32-36.)

The defendant filed a memorandum in aid of sentencing on October 19, 2021, raising no suggestion that U.S.S.G. § 2A6.1(b)(6) would apply (Dkt No. 60).  To the contrary, the defendant's memorandum stated that the parties had "agreed to a base level offense of 12" and that "[n]o additional adjustments were made within the level of offense within the plea agreement."  (*Id*. at 2.)

At the sentencing hearing on October 21, 2021, the defendant raised no argument that U.S.S.G. § 2A6.1(b)(6) should apply to the sentencing guidelines calculation (Dkt No. 64 at 3 n.1).[6]  The Court calculated the guidelines consistent with the plea agreement, and sentenced the defendant to 14 months of imprisonment and three years of supervised release.

On November 4, 2021, at 11:54 pm (14 days after the sentence was imposed, though filing six minutes later would have been 15 days), the defendant filed his motion to "correct" the sentence, arguing (contrary to the prior position he took before the Court) that there should have been a four-point decrease to the base offense level under the sentencing guidelines under U.S.S.G.

---

[6] The defendant also did not dispute (either in his sentencing memorandum or at the sentencing hearing) that he had made numerous other inciting social media posts in the weeks leading up to January 6, 2021, from the same social media account used to make the threats on January 6.  As we explained in our memorandum in aid of sentencing (Dkt No. 59 at 6 n.3), these included, among others: "This may sound a bit radical, but folks WE ARE AT WAR, and it's about time that We come to terms with this realism. We hunted down Bin Laden and killed him because he waged war against our sovereignty with a few strategicly [sic] placed aircrafts." . . .  "And We must ask ourselves, are the Democrats no less of an enemy to our Constitution?" . . . "The Democrats view us as watchdogs of the Constitution... watch dogs with no teeth. And it's time to physically bite them, while there is still enough of us to form a strong resistance."" (November 4, 2021); "The time has come to ready ourselves for an offensive stance against the Democratic Antifa Army. . . . Only the brute force of the men and women of this national can defeat this enemy who has envaded [sic] ours country (our home)" (November 15, 2020); "Why Have A Second Amendment If You're Afraid To Exercise it??? . . . The United States Constitution is under seize.  Put Your Guns Where Your Mouth Is.  Lets Stop The Steal." (November 24, 2020); "There is roughly 800,000 federal agents, and less than 250 Traitor Democrat members in D.C. . . . There are over 70 million of Us.  We can take them!!!" (November 28, 2020); "We must storm Washington D.C., in one united and well armed assembly, to physically repossess Our country." (November 30, 2020); "Its time for America to put its money where its mouth has been.  Will it get bloody, yes.  But freedom ain't free." (December 11, 2020); "Ok.  So the U.S. Supreme Court has just told 174 million voters to fuck off!!!  So, since the Constitution is no longer the rule of law, then there IS no law . . . until We take our country back . . . So I guess all of the talking is over.  Its Patriot Time!" (December 11, 2020).  The defendant also posted a YouTube video in 2020 where he appeared in military-style clothing and urged veterans to participate in armed protests.

4

§ 2A6.1(b)(6) because, according to the defendant, "the offense involved a single instance evidencing little or no deliberation."  (Dkt No. 64 at 2-3.)

## ARGUMENT

There is no merit to the defendant's request to "correct" the sentence under Federal Rule of Criminal Procedure 35(a), and the defendant's motion should be denied.

After sentence has been imposed on a criminal defendant, the sentence "may not be modified by a district court except in limited circumstances," *Dillon v. United States*, 560 U.S. 817, 824 (2010), and a district court "does not have inherent power to resentence defendants at any time."  *United States v. Green*, 405 F.3d 1180, 1184 (10th Cir. 2005).  Some of the limited circumstances under which a sentence may lawfully be modified are set forth in "Rule 35 of the Federal Rules of Criminal Procedure," 18 U.S.C. § 3582(c)(1)(B), but the "scope of Rule 35 is intended to be narrow."  *See Hill v. United States*, 368 U.S. 424, 430 (1962).

Federal Rule of Criminal Procedure 35(a) ("Correcting Clear Error") provides that: "Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."  Fed. R. Crim. P. 35(a).  "A ruling's error is clear if, at the time it was made, a clear precedent in the Supreme Court or [the D.C. Circuit] established its erroneous character."  *United States v. Terrell*, 696 F.3d 1257, 1260 (D.C. Cir. 2012) (*cited by United States v. Martinez*, 497 F. App'x 72, 73 (D.C. Cir. 2013).  Rule 35 "is not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines . . .".  *United States v. Palmer*, 854 F.3d 39, 47-48 (D.C. Cir. 2017).  The purported "failure of a court to consider a discouraged factor within the sentencing guidelines or to vary from the Advisory Sentencing Guidelines does not constitute arithmetical or technical error within the meaning of Rule 35."

*United States v. Hughes*, 2006 WL 2092634 at *9 (D.D.C. July 27, 2006).  *See also United States v. Anderson*, 491 F. Supp. 2d 1, 4-5 (D.D.C. 2007) (Rule 35(a) is "not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court to simply or for the court simply to change its mind about the appropriateness of the sentence") (*citing* Fed. R. Crim. P. 35 advisory committee's note to 1991 amendments).  Rule 35(a) is instead "intended only to provide[] an efficient and prompt method for correcting obvious technical errors that are called to the court's attention *immediately* after sentencing."  *Anderson*, 491 F. Supp. 2d at 4-5 (*citing* Fed. R. Crim. P. 35 advisory committee's note to 1991 amendments).

First, the motion must be denied because it fails to allege any "arithmetical, technical, or other clear error."  Fed. R. Crim. P. 35(a).  The defendant raises no allegation of an obvious mathematical or technical error, or any legal decision that was contrary to law or judicial precedent.  Instead, the defendant suggests that a fact-based provision of the U.S. Sentencing Guidelines should have been applied, but – as explained above – Rule 35 "is not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines . . .".  *United States v. Palmer*, 854 F.3d 39, 47-48 (D.C. Cir. 2017).

Second, U.S.S.G. § 2A6.1(b)(6) is inapplicable in this case because this was not an offense that "involved a single instance evidencing little or no deliberation."  U.S.S.G. § 2A6.1(b)(6).  To the contrary, the defendant admitted at the plea hearing that he made *two* (not one) interstate threats on January 6.  Additionally, the record plainly establishes a lengthy additional history by the defendant of social media statements that were threatening and inciting in nature, all relating to anger over the November 2020 election, indicating extensive prior deliberation (*see* footnote 6).  *See, e.g., United States v. Humphreys*, 352 F.3d 1175 (8th Cir. 2003) (the term "single instance"

6

suggests that the provision applies only to "defendants whose threats are the product of a single impulse, or are a single thoughtless response to a particular event") (*citing United States v. Sanders*, 41 F.3d 480, 484 (9th Cir. 1994); *United States v. Freeman*, 176 F.3d 575, 578 (1st Cir. 1999) (affirming that the conduct was not a "single instance" where the defendant "made at least two threatening communications").[7]   The defendant used his social media account in efforts to threaten and incite violence from November 2020 through January 2021, flatly contradicting any suggestion that his conduct on January 6, 2021, was a single event or flowed from a single impulse.

Third, the doctrine of judicial estoppel prevents the defendant from taking the position he espouses here (that U.S.S.G. § 2A6.1(b)(6) should have applied), which directly contradicts the position he took (1) in the plea agreement, (2) at the plea hearing, (3) in his sentencing memorandum, and (4) at the sentencing hearing.  "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."  *New Hampshire v. Maine*, 5323 U.S. 742, 749 (2001) (*citing Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).  The doctrine of judicial estoppel "protect[s] the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993).  The defendant specifically and consistently took the position that U.S.S.G. § 2A6.1(a)(1) provided a base offense level of 12, and that "[n]o additional adjustments were made within the level of offense within the plea agreement."  (Dkt No. 60 at 2.)  The

---

[7] The defendant mistakenly suggests that his travel plans in mid-January 2021 indicate that he "did no planning" and took no "effort to carry out the threat."  (Dkt No. 64 at 5).  The defendant admitted in the statement of offense and at the plea hearing that he cancelled his travel plans the evening before he was scheduled to travel.  (Dkt No. 53 at 5; Exhibit B at 13-14).

defendant (and the government) succeeded in persuading the court to adopt this position at sentencing.  The defendant would plainly "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001).

Finally, the defendant failed to provide the Court the opportunity to timely consider his request; Rule 35(a) allows a court to correct a sentence only "[w]ithin 14 days after sentencing," a jurisdictional requirement that has long since passed.  Indeed, the defendant filed his motion with only six minutes to spare (at 11:54 p.m.) before the 14-day deadline elapsed.  The 14-day requirement to correct clear error is a jurisdictional requirement. *See*, *e.g.*, *United States v. Griffin*, 524 F.3d 71, 83 n.14 (1st Cir. 2008) ("[C]ourts of appeals have uniformly held that Rule 35(a)'s . . . time limit is jurisdictional . . . [and so] a district court choosing to resentence under that Rule must do so within [14] days of the initial sentence"); *United States v. Gonzalez-Rodriguez*, 777 F.3d 37, 42 (1st Cir. 2015) ("If the 14-day time period expires with no ruling from the district court, the district judge's jurisdiction to alter the sentence is extinguished, and the motion is deemed denied as of the date the period expires"); *United States v. Abreu-Cabrera*, 64 F.3d 67, 73 (2nd Cir. 1995) (14-day time limit in Rule 35 is jurisdictional); *United States v. Barragan-Mendoza*, 174 F.3d 1024, 1030 (9th Cir. 1999) (court is required to act within the proscribed time limit by the plain language of Rule 35); *United States v. Pletnyov*, 47 F. Supp. 3d 76, 79 (D.D.C. 2014) ("As more than 14 days have elapsed since the defendant's sentence was imposed, relief under Rule 35 is plainly foreclosed").  Some courts have indicated that the filing of a Rule 35 motion within 14 days of sentencing may render an otherwise final order nonfinal until disposition of the motion. *See, e.g., United States v. Carmouche*, 138 F.3d 1014, 1016 (5th Cir. 1998); *United States v.*

*Pollack*, 655 F.2d 243, 246 (D.C. Cir. 1980) (considering a different provision of an earlier version of Rule 35, "[w]e need not decide whether to follow the courts of appeals that have allowed district courts a reasonable time after the expiration of the 120-day period to rule on a timely filed Rule 35 motion" because "[e]ven if the district court had a reasonable time beyond the end of the 120-day period, it did not act within such period"). Such a view appears to contradict Federal Rule of Criminal Procedure 45(b)(2), which specifies that "[t]he court may not extend the time to take any action under Rule 35, except as stated in that rule." Fed. R. Crim. P. 45(b)(2).

## CONCLUSION

For these reasons, and any others stated in the event of a hearing on this matter, the defendant's motion should be denied. The United States reserves the right to pursue further action as a consequence of the defendant's breach of the plea agreement.


Respectfully submitted,


MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By:     /MJF/
Michael J. Friedman
N.Y. Bar 4297461
Assistant U.S. Attorney
United States Attorney's Office
555 Fourth St., NW
Washington, D.C. 20001
202-252-6765
Michael.Friedman@usdoj.gov