```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


 UNITED STATES OF AMERICA,      .
                                .
         Plaintiff,             .  CR No. 21-0198 (TSC)
                                .
    v.                          .
                                .
 TROY ANTHONY SMOCKS,           .  Washington, D.C.
                                .  Wednesday, September 29, 2021
         Defendant.             .  12:58 p.m.
 . . . . . . . . . . . . . . . .


                     TRANSCRIPT OF PLEA HEARING
                BEFORE THE HONORABLE TANYA S. CHUTKAN
                    UNITED STATES DISTRICT JUDGE



 APPEARANCES:

 For the Government:           MICHAEL J. FRIEDMAN, AUSA
                               U.S. Attorney's Office
                               555 Fourth Street NW
                               Washington, DC 20530
                               (202) 252-7566

 For the Defendant:            JOHN L. MACHADO, ESQ.
                               Law Office of John Machado
                               503 D Street NW
                               Suite 310
                               Washington, DC 20001
                               (703) 989-0840

 Court Reporter:               BRYAN A. WAYNE, RPR, CRR
                               U.S. Courthouse, Room 4704-A
                               333 Constitution Avenue NW
                               Washington, DC 20001
                               (202) 354-3186




 Proceedings reported by stenotype shorthand.
 Transcript produced by computer-aided transcription.
```

1           THE COURT:  Oh, you can't see me?
2           THE DEFENDANT:  No, ma'am.
3           THE COURT:  Did that just happen?
4           THE DEFENDANT:  No, ma'am.  I alerted the Court about
5    five minutes ago that I couldn't see; the screen was black.
6           THE COURT:  Oh.
7           THE DEPUTY CLERK:  It's something with the D.C. jail.
8    I don't know what's going on.
9           THE COURT:  Mr. Machado, do you want to go forward
10   still?
11          MR. MACHADO:  If Mr. Smocks is comfortable.
12          THE COURT:  Mr. Smocks, are you comfortable
13   going forward only being able to hear me?
14          THE DEFENDANT:  Yes, ma'am.
15          THE COURT:  All right.  Well, let me know if that
16   changes.  Have you seen the document marked Statement of Offense?
17          THE DEFENDANT:  Yes, ma'am, I have.
18          THE COURT:  Did you sign it?
19          THE DEFENDANT:  Yes, ma'am, I did.
20          THE COURT:  By signing it, did you acknowledge
21   that you have read it and that you understood it?
22          THE DEFENDANT:  Yes, ma'am.
23          THE COURT:  And this is the important question:
24   Does the Statement of Offense truly and accurately describe
25   what you did in this case?

```
 1                THE DEFENDANT:  Yes, ma'am.
 2                THE COURT:  On the morning of January 6, 2021, did
 3   you send a threatening message on a social media site that was
 4   seen by thousands of other social media users?
 5                THE DEFENDANT:  Yes, ma'am.
 6                THE COURT:  And did that message contain a threat to
 7   injure law enforcement officers?
 8                THE DEFENDANT:  Yes, ma'am.
 9                THE COURT:  Did you travel from Texas to Washington,
10   D.C., on January 5 and return to Texas on January 7?
11                THE DEFENDANT:  Yes, ma'am.
12                THE COURT:  On the morning of January 6, when you sent
13   that threatening message, were you located in Washington, D.C.?
14                THE DEFENDANT:  Yes, ma'am.
15                THE COURT:  And did the message that you sent include
16   the following language:  "Many of us will return on January 19,
17   2021, carrying Our weapons, in support of Our nation's resolve,
18   to which the world will never forget"?
19                THE DEFENDANT:  Yes, ma'am.
20                THE COURT:  "We will come in numbers that no standing
21   army or police agency can match.  However, the police are NOT
22   Our enemy, unless they choose to be."  Did you write those words?
23                THE DEFENDANT:  Yes, ma'am, I did.
24                THE COURT:  On the evening of January 6, 2021, while
25   in Washington, D.C., did you send another electronic message on
```

1   a social media service?
2            THE DEFENDANT:  Yes, ma'am.
3            THE COURT:  And did that message include a threat
4   to injure politicians and technology company executives?
5            THE DEFENDANT:  Yes, ma'am.
6            THE COURT:  I'm sorry?
7            THE DEFENDANT:  Yes, ma'am.
8            THE COURT:  And did that message include the following
9   language:  "Today Eric Trump said that he would physically fight
10  with the Patriots to save Our country.  Today Representative
11  Mo Brooks asked the Patriots to pledge Our lives and wealth
12  to fight for Our country.  And today President Trump told us
13  to 'fight like hell.'  He said Our cause is a matter of national
14  security, and that these people behind the massive fraud must be
15  arrested and brought to justice.  And that task, falls on the
16  shoulders of We the People ... the American Patriots.
17       "So over the next 24 hours, I would say, let's get our
18  personal affairs in order.  Prepare Our Weapons, and then go
19  hunting.  Let's hunt these cowards down like the Traitors that
20  each of them are.  This includes, RINOS, Dems, and Tech Execs.
21  We now have the green light.  All who resist Us, are enemies of
22  Our Constitution, and must be treated as such."
23       Did the statements that you transmitted include that language?
24           THE DEFENDANT:  Yes, ma'am.
25           THE COURT:  And were these messages sent for the

1    purpose of issuing threats?
2            THE DEFENDANT:  Yes, ma'am.
3            THE COURT:  And did your social media profile
4    falsely indicate that you were a retired military officer?
5            THE DEFENDANT:  Yes, ma'am.
6            THE COURT:  Mr. Friedman, do you wish to rely on your
7    Statement of Offense, or do you want to describe additional
8    evidence of the charges against Mr. Smocks?
9            MR. FRIEDMAN:  The Statement of Offense is sufficient,
10   Your Honor.
11           THE COURT:  Mr. Smocks, do you understand the charges
12   against you?
13           THE DEFENDANT:  Yes, ma'am.
14           THE COURT:  Okay.  Now, the parties have submitted a
15   written letter outlining the plea agreement.  Before we discuss
16   the terms of the agreement, let me ask you, Mr. Machado, does
17   this plea agreement reflect the only offer made to Mr. Smocks in
18   this case?
19           MR. MACHADO:  It does, Your Honor.
20           THE COURT:  All right.  Mr. Smocks, have you seen
21   the plea agreement letter between you and the government?
22           THE DEFENDANT:  Yes, ma'am.
23           THE COURT:  Do you have a copy of it?
24           THE DEFENDANT:  No, ma'am.
25           THE COURT:  Did you sign it?

```
1                    THE DEFENDANT:  Yes, ma'am.
2                    THE COURT:  Okay.  And did you read it carefully?
3                    THE DEFENDANT:  Yes, ma'am, I did.
4                    THE COURT:  Did you go over it with your lawyer?
5                    THE DEFENDANT:  Yes, ma'am.
6                    THE COURT:  Have you had a chance that to discuss
7      any questions you might have about it with your lawyer?
8                    THE DEFENDANT:  Yes, ma'am.
9                    THE COURT:  Do you understand it?
10                   THE DEFENDANT:  Yes, ma'am.
11                   THE COURT:  And have you had enough time to talk to
12     Mr. Machado about it?
13                   THE DEFENDANT:  Yes, ma'am, I have.
14                   THE COURT:  Okay.  Mr. Machado, could you summarize
15     the salient terms of the plea agreement?
16                   MR. MACHADO:  Yes, Your Honor.  This is going to be
17     a plea agreement in which Mr. Smocks will be pleading guilty
18     to Count 1 of the indictment, which is Threats in Interstate
19     Communication, in violation of 18 U.S.C. § 875(c).  That is
20     Count 1 of the indictment, and the government will be dismissing
21     Count 2 of the indictment.
22         The maximum sentence is five years, a fine of $250,000
23     or twice the pecuniary gain or loss of the offense, a term
24     of supervised release of not more than three years, and an
25     obligation to pay any applicable interest or penalties or
```

1       fines on restitution not timely made, as well as a special
2       assessment of $100.
3              Other salient terms of it are that my client will be
4       agreeing to the factual stipulations, will cooperate with
5       additional investigation in that they will be able to access
6       his social media accounts in regard to this matter.
7              There has also been a sentencing guideline analysis that
8       the parties agree put him at a base level of 12, and that he is
9       accepting responsibility, thus getting his two-level reduction.
10             The parties have estimated, and it is an estimate, of a
11      criminal history category of three criminal history points,
12      but there is a possibility of six criminal history points.
13      So he is either in Category II or Category III, which would
14      put his estimated guideline range at 8 to 14 months or 10 to 16
15      months respectively.
16             The government is reserving step-back and reserving
17      allocution.  Mr. Smocks understands that our calculations are --
18      that the Court is not bound by this agreement or the sentencing
19      guidelines and that the calculation made by the presentence
20      report writer could arrive at a different amount of time on the
21      sentencing guidelines.
22             I think that covers enough salient points, but if I missed
23      anything or the Court has any questions...
24                THE COURT:  All right.  Mr. Smocks, you heard
25      Mr. Machado's description of the plea agreement.  Is that

1   what you agreed to?

2   THE DEFENDANT: Yes, ma'am.

3   THE COURT: Okay. And you understand -- do you have
4   any confusion or any questions about the agreement that you'd
5   like to ask me or Mr. Machado about?

6   THE DEFENDANT: No, ma'am.

7   THE COURT: All right. I accept that this plea
8   agreement is of the type authorized by Federal Rule of Criminal
9   Procedure 11(c)(1)(A) in that it specifies that Mr. Smocks will
10  not be further prosecuted criminally by the U.S. Attorney's
11  Office for the District of Columbia for the conduct set forth
12  in the Statement of Offense.

13     Now, Mr. Smocks, have you and your lawyer talked about
14  sentencing and the statute and how the sentencing guidelines
15  might apply to your case?

16  THE DEFENDANT: Yes, ma'am, we have.

17  THE COURT: Now, do you understand that if I accept
18  your guilty plea in this case, you could receive a maximum
19  sentence of five years of imprisonment?

20  THE DEFENDANT: Yes.

21  THE COURT: All right. And it is important that you
22  understand, as I said, I cannot sentence you to more than the
23  statutory maximum term of imprisonment. That would be an event
24  for which you could appeal. At the beginning I said the one
25  exception was if I gave you a sentence above the statutory

\* \* \* \* \* \*

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.

*/s/ Bryan A. Wayne*
Bryan A. Wayne