**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL NO. 21-cr-00198 (TSC)** |
| **TROY ANTHONY SMOCKS,** | |
| **Defendant.** | |

**GOVERNMENT'S RESPONSE TO**
**OBJECTION TO PROBATION PETITION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to the Objection to Probation Petition filed by defendant Troy Anthony Smocks (Dkt No. 75). The defendant's objection should be overruled, and the Court should modify the conditions of supervised release as requested in the Petition filed by the United States Probation Office ("USPO") (Dkt No. 71).

**BACKGROUND**

The defendant was charged by indictment on March 9, 2021, with two violations of 18 U.S.C. § 875(c) (threats in interstate commerce) (Dkt No. 8).

On September 29, 2021, the defendant pleaded guilty to count one of the indictment pursuant to a plea agreement (Dkt No. 54). At the plea hearing, the defendant agreed that he had sent threatening messages (to injure law enforcement officers, politicians, and business executives) on social media on January 6, 2021, using a social media profile that falsely indicated that he was

a retired military officer.  (Dkt No. 53 at 3-5; 09/29/21 Transcript at 13-16, attached as Exhibit A.)[1]

On September 7, 2021 (more than three weeks prior to the plea hearing), the United States Probation Office (USPO) disseminated a draft Presentence Investigation Report stating that the Court may impose "computer monitoring/search" as a condition of supervised release "based on the defendant's acts in the instant case, which included the transmittal in interstate or foreign commerce of any communication containing any threat to injure the person of another."  (Dkt No. 51 at 27.)  The UPSO included the same language in its final Presentence Investigation Report disseminated on October 4, 2021 (Dkt No. 55 at 28).[2]  The defendant did not object to the proposed computer monitoring condition.  (*Id*. at 33-35.)  Also on October 4, 2021, the USPO disseminated its sentencing recommendation, stating: "it is recommended that the Court impose computer monitoring and/or search, based on the defendant's acts in the instant case . . .".  (Dkt No. 56 at 2.)

On October 19, 2021, the defendant filed his memorandum in aid of sentencing raising no objection to a computer monitoring/search requirement as a condition of supervised release (Dkt No. 60).

---

[1] The defendant had used the same social media account to make numerous other disturbing social media posts in the weeks leading up to January 6, 2021, as explained (without rebuttal) in the government's sentencing memorandum.  (*See* Dkt No. 59 at n.3.)

[2] The final Presentence Investigation Report detailed the defendant's approximately 17 prior criminal convictions, spanning from the early 1980s through 2006 (with multiple revocations of supervised release or probation), some of which involved the use of computer equipment to, among other things, create false identification documents and counterfeit financial instruments.  (Dkt No. 55 at 8-23.)

On October 21, 2021, the Court sentenced the defendant to a 14-month term of imprisonment, to be followed by 36 months of supervised release.  (10/21/21 Transcript at 50, attached as Exhibit B.)  According to the transcript of the sentencing hearing, the Court set conditions of supervised release including:

> Computer monitoring and search.  To ensure compliance with the computer monitoring condition, you must allow the probation officer to conduct initial and periodic unannounced searches of any computers as defined in 18 U.S.C. § 1030(c)(1)[3] subject to computer monitoring.

> These searches shall be conducted to determine whether the computer contains any prohibited data prior to installation of the monitoring software, whether the monitoring software is functioning effectively after its installation, and whether there have been attempts to circumvent the monitoring software after its installation.  You must warn other people who use these computers that the computers may be subject to searches pursuant to this condition.

(Exhibit B at 51-52.)  The defendant raised no objection to this term of supervised release.

Also at the sentencing hearing, the Court noted that the defendant's social media posts on January 6 went to "tens of thousands of users" and that they "encouraged people who were actively fighting law enforcement, people who were actively engaged in trying to stop the transition of power."  (Exhibit B at 44-45.)  The Court noted that the defendant had approximately 17 prior criminal convictions, most of which "involved some form of deception and fraudulent behavior, and he's frequently impersonated a law enforcement or military officers, as he did in this case." (*Id*. at 47.)  The defendant's last period of supervised release had ended just two years before his criminal activity on January 6, 2021, and the defendant's record was "notable for his apparent inability to live a law-abiding life."  (*Id*. at 47.)  The Court evaluated the defendant's personal

---

[3] The transcript reference to § (c)(1) appears to be a mis-transcription by the court reporter, as the definition of a computer is contained in § (e)(1), which sounds similar to (c)(1) when spoken aloud.

statement at sentencing as follows: "you do not appear to have any genuine remorse or even really an understanding of the seriousness of your actions.  And moreover, you come into this court and portray yourself as a victim of racism, which I completely reject."  (*Id*. at 49-50.)

On November 4, 2021, the defendant filed a Motion to Correct Sentence, but raised no objection to the computer monitoring/search term of supervised release (Dkt Nos. 64, 66).  This Court denied the Motion to Correct Sentence on December 20, 2021 (Dkt Nos. 69-70).

On September 7, 2022 (nearly 11 months after the Court imposed sentence), the USPO for the United States District Court for the District of Columbia filed a Petition seeking a modification of the terms of supervised release, to specify that the defendant "must allow the probation officer to install computer monitoring software on any computer (as defined in 18 U.S.C. § 1030(e)(1)) [he] use[s]."  (Dkt No. 71 at 1.)  The Petition explained that the defendant's residence was "unstable," but that the defendant was self-employed at his biohazard company.  (*Id*. at 3.)  The Petition stated that the USPO for the Eastern District of Texas ("E.D.T.X.") had, "upon [the defendant's] release from custody, . . . accepted supervision of his case."  (*Id*. at 3.)  The Petition identified the need for the modification as follows: "the USPO is unable to install computer monitoring software without the appropriate set of conditions imposed," and because the defendant declined to sign a waiver of his right to a hearing under Federal Rule of Criminal Procedure 32.1(c).  (*Id*. at 3.)

The Court held a preliminary revocation hearing on October 5, 2022, and allowed the defendant an opportunity to present any objection to the proposed modification in writing.

On October 17, 2022, the defendant objected in writing ("Objection to Probation Petition") to the computer monitoring/search requirement imposed as a term of supervised release (Dkt No.

75 at 3) (the defendant "strongly objects to the Probation Office Permission's request to do any monitoring of his electronic communications"). The defendant's Objection indicated that in July 2022, he had filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Texas ("USDC-E.D.T.X.") (Case No. 22-cv-592, E.D.T.X.) alleging "actual innocence" in this criminal case and challenging the validity of his conviction.[4] The defendant's Objection also indicated that on September 30, 2022, he had filed an emergency petition for a writ of prohibition in the USDC-E.D.T.X. (Case No. 22-cv-838, E.D.T.X.) seeking an order preventing the USPO from installing computer monitoring software on the defendant's computers.[5] The Objection argues that this Court lacks jurisdiction to modify the terms of supervised release, and that the proposed modification would violate the defendant's rights under the First Amendment of the United States Constitution. These claims all fail.

## ARGUMENT

The Court has already ordered the installation of computer monitoring software as a term of supervised release, without prior objection (Exhibit B at 51-52), and the requirement was fully

---

[4] On October 20, 2022, the United States Magistrate Judge in the E.D.T.X. issued a Report and Recommendation in Case No. 22-cv-582 recommending that the case be transferred to the District of Columbia "for further proceedings in accordance with the rules of that district." (Case No. 22-cv-592, E.D.T.X., Dkt No. 9.) The United States Magistrate Judge explained that "[t]he appropriate venue for challenges to the legality of a conviction is in the district court that convicted and sentenced the petitioner." (*Id.*)

[5] On October 21, 2022, the United States Magistrate Judge in the E.D.T.X. issued a Report and Recommendation in Case No. 22-cv-828 recommending that the case be transferred to the District of Columbia "for further proceedings in accordance with the rules of that district." (Case No. 22-cv-838, E.D.T.X., Dkt No. 8 at 3.) The Report and Recommendation explained that the D.D.C. "is the appropriate venue for challenges to conditions of supervised release" because the D.D.C. "is the sentencing court" which "retains jurisdiction to modify conditions of supervised release . . .". (*Id.* at 3.) The Report and Recommendation also raised an issue about whether the defendant resides in the E.D.T.X. at all. (*Id.* at 2.)

justified under 18 U.S.C. § 3583(d).  Though there is no need to modify the terms of supervised release, the United States has no objection to the modification request by the USPO, which would help ensure that the defendant is fully aware of his supervision requirements.[6]  *See* 18 U.S.C. § 3583(f) ("The court shall direct that the probation officer provide the defendant with a written statement that sets forth all the conditions to which the term of supervised release is subject, and that is sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required.").  There is no merit to the defendant's objections, and they should be overruled.

First, the computer monitoring/search requirement was, and remains, justified under 18 U.S.C. 3583(d) (authorizing a court to order any condition of supervised release that is set forth as a discretionary condition of probation in section 3563(b), provided that the condition "(1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D); (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)").  Courts have summarized the requirements to mean that special conditions of probation or supervised release:

Must be reasonably related to (1) the defendant's offense, history, and characteristics; (2) the need to reflect the seriousness of the offense, promote respect for the law, and provide

---

[6] The Court was clear in setting the terms of supervised release that the defendant "shall comply with the following special condition: Computer monitoring and search."  (Exhibit B at 51.)  The Court elaborated: "you must allow the probation officer to conduct initial and periodic unannounced searches of any computers . . ."  (*Id*.)  The Court's order was also clear that this included the installation of computer monitoring software: "These searches shall be conducted to determine whether the computer contains any prohibited data prior to installation of the monitoring software, whether the monitoring software is functioning effectively after its installation, and whether there have been attempts to circumvent the monitoring software after its installation."  (*Id*.)  The Court's order was sufficiently clear that the defendant must allow the installation of the computer monitoring software, and so there is legally no need for any modification now.

just punishment for the offense; (3) the need for adequate deterrence; (4) the need to protect the public from further crimes; and (5) the need to provide the defendant with treatment.

*United States v. Taylor*, 796 F.3d 788, 792 (7th Cir. 2015).

In the absence of the computer monitoring/search requirement, there is a reasonable likelihood that the defendant would use his computers to commit criminal activity in the future, as he did on not only January 6, 2021, but also on several prior occasions. The social media threats on January 6 were not an isolated incident but were part of a continuing course of conduct for weeks in advance. (*See* Dkt No. 59 at n.3.) The defendant's extensive criminal history involves other uses of computers and computer equipment to create false identification documents, fraudulent financial instruments, and to otherwise impersonate law enforcement officers, pilots, and members of the armed forces. (*See, e.g.,* Dkt No. 55 at 20-21.)

The Court has previously noted the defendant's "apparent inability to live a law-abiding life" in light of his extensive criminal history over the course of decades (Exhibit B at 47). In short, there is every reason to fear that the defendant will use computers, smart phones, and other digital devices to violate the law again. Accordingly, there is good cause to require monitoring here to protect the public through deterrence, and to appropriately reflect the offense and the defendant's history, and to promote respect for the law. The Court did not require any limitations on lawful computer use, and the USPO Petition indicates that the USPO would not search the devices absent reasonable suspicion to believe that the defendant is engaging in unlawful behavior. Thus, the monitoring will be the least intrusive means to protect against future criminal conduct.

Second, the monitoring is consistent with prior judicial decisions. Courts "have upheld broad restrictions on internet access as a condition of supervised release where (1) the defendant used the internet in the underlying offense; (2) the defendant had a history of improperly using the

internet to engage in illegal conduct; or (3) particular and identifiable characteristics of the defendant suggested that such a restriction was warranted." *United States v. Aquino-Florenciani*, 894 F.3d 4, 7 (1st Cir. 2018) (cleaned up).  As the defendant points out in his Objection—no doubt owing to the close connection between internet use and child pornography and child abuse offenses—monitoring of a probationer's computer use most frequently involved those kinds of crimes.[7]

But courts have also approved limitations on internet use where, as here, the defendant was convicted of making threats, following a history of such conduct. *See, e.g., United States v. Hayes*, 283 F. App'x 589, 594-95 (9th Cir. 2008) ("given Hayes history of threats and volatile behavior, the district court could have reasonably concluded that allowing Hayes' probation officer to inspect and monitor Hayes' personal computer-which, in turn, may deter Hayes from utilizing another viable means of sending threats to his family-was reasonably necessary to achieve deterrence or public protection."); *United States v. Sullivan*, 588 F. Appx. 631 (9th Cir. 2014) (affirming computer restrictions for defendant accused of making threatening communications in violation of

---

[7] *See, e.g. United States v. Wagner*, 872 F.3d 535, 541-42 (7th Cir. 2017) (affirming condition of supervised release that involved installation of filtering software on any computer defendant possessed or used to monitor access to websites depicting sexually explicit conduct where defendant was convicted of knowingly attempting to persuade or induce a minor to engage in illegal sexual activity); *Taylor*, 796 F.3d at 789 ("In light of his use of his computer to attempt to contact a young teenage girl … we affirm the imposition of a condition that requires Taylor to make his internet-capable devices available for inspection, even without any reasonable suspicion that he has committed a new crime."); *United States v. Freeman*, 94 Fed. App'x. 40, 44 (3d Cir. 2004) (affirming, as a condition of supervised release, a requirement to inform the probation department of all computers to which defendant had access and any Internet provider he used, and accepting the installation of monitoring software on his personal and business computers; the district court adequately explained that the conditions would "provide deterrence to future criminal behavior and to protect the public from this type of offender" in light of his "the history … in relation to his evident pedophilia"). After all, "like drug users … there is a high rate of recidivism among sex offenders." *United States v. Lifshitz*, 369 F.3d 173, 189 (2d Cir. 2004).

18 U.S.C. § 875(c), in part because use of a computer and the internet was essential to the commission of the crime); *People v. Ebertowski*, 228 Cal. App. 4th 1170, 1176–77 (2014).[8]

Third, the computer monitoring/search requirement does not violate the First Amendment. The defendant's Objection notes that "a special condition of supervised release . . . must comply with [18 U.S.C.] § 3583(d) to survive a First Amendment challenge." (Dkt No. 75 at 8-9) (citing *United States v. Abbate*, 970 F.3d 601, 605 (5th Cir. 2020)). The defendant complains that the computer monitoring is not "reasonably necessary" and would chill his communications with third parties and "potentially violate attorney work product privilege with individuals [the defendant] is helping." (*Id*. at 7-9.) Notably, the USPO Petition contains no information that the defendant is employed as a legal assistant, and the USPO-E.D.T.X. reported that the defendant did not previously claim to the USPO-E.D.T.X. to be working as a legal assistant or providing legal services to anyone.

But even if the defendant is employed as a legal assistant, his claim still fails. As set forth above, the supervised release condition serves critical government interests in protecting the public from criminal conduct, deterring future misconduct, and promoting respect for the law, and it is narrowly tailored to accomplish those interests. The computer monitoring does not infringe on

---

[8] Courts have occasionally vacated conditions of probation or supervised release that, unlike here, lack a sufficient explanation for the basis of the restrictions. *See, e.g., United States v. Senke*, 986 F.3d 300, 318 (3d Cir. 2021) (vacating, *inter alia*, the requirement to "allow the probation officer to install computer monitoring software on any computer ... you use"; although "there is a strong need to protect the public … any limitations must be supported by facts, tailored to Senke's conduct, and aim to deter future crimes, protect the public, or rehabilitate" the defendant) (cleaned up); *United States v. Lifshitz*, 369 F.3d 173, 175, 193 (2d Cir. 2004) (defendant raised a Fourth Amendment challenge to a probation condition for the "installation of systems that will enable the Probation office or its designee to monitor and filter computer use on a regular or random basis and any computer owned or controlled by the defendant"; after finding that the "scope of the computer monitoring condition as it stands may … be overbroad," remanding for the "the district court to evaluate the privacy implications of the proposed computer monitoring techniques as well as their efficacy as compared with computer filtering" and noting that the 'special needs' of the probation system may render a computer monitoring condition reasonable").

any speech in a manner that offends the First Amendment; "there is no blanket prohibition on speech nor is there a prohibition on a type of speech. In fact, there is no speech restriction at all." *White v. Baker*, 696 F. Supp.2d 1289, 1304 (N.D. Ga. 2010) (holding that state law requiring convicted sex offenders to provide to government officials their internet addresses, usernames, and passwords was content-neutral and subject only to intermediate scrutiny analysis, but enjoining enforcement of the law due to other constitutional problems); *cf. Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (a content-neutral regulation of speech is permitted if the regulation is narrowly tailored to serve a significant governmental interest, and if it leaves open ample alternative channels for communication of information). The computer monitoring requirement is indeed the most narrowly-tailored method of accomplishing the governmental interests at stake here, and it is consistent with 18 U.S.C. § 3583(d) and far less restrictive than a complete ban on internet or computer usage.

The warnings proposed in the USPO Petition are more than sufficient to guard against the risks of disclosure of attorney-client privilege, in the event that the defendant needs to communicate with attorneys in his employment. The USPO Petition includes a proposed requirement that the defendant "must warn any other people who use these computers or devices capable of accessing the internet that the devices may be subject to searches pursuant to this condition." Such a warning will prevent inadvertent disclosures of privileged information to the USPO.

Fourth, there is no basis to conclude that the Court transferred jurisdiction of this case to the United States District Court for the Eastern District of Texas. (Dkt No. 75 at 5-7.) To the contrary, the Court did not effect such a transfer of jurisdiction. The defendant is correct that a

court "may" transfer jurisdiction under 18 U.S.C. § 605 "to the district court for any other district to which the person is required to proceed as a condition of his probation or release or is permitted to proceed with the concurrence of such court."  18 U.S.C. § 605.   But the Court here did not exercise that authority, a fact which differentiates this case from the situations raised by the defendant.  For example, the defendant relies on *United States v. El Herman*, 971 F.3d 784 (8th Cir. 2020), but in that case the district court in the Northern District of Iowa issued an order transferring jurisdiction for supervised release to the district court in the Northern District of Illinois, and a judicial officer in Illinois accepted the transfer of jurisdiction.  (Order attached as Exhibit C.)  The defendant correctly notes that he is supervised by the USPO-E.D.T.X., but that does not mean there was a transfer of jurisdiction of this criminal case.  18 U.S.C. § 3603(4) requires a probation officer to "be responsible for the supervision of any probationer or person on supervised release who is known to be within the judicial district."  18 U.S.C. § 3603(4).[9]

## CONCLUSION

For these reasons, and any others stated at a hearing on the matter, the defendant's Objection should be overruled.

---

[9] The defendant suggests that his filing of a writ of prohibition in the E.D.T.X. somehow causes jurisdiction to be transferred from this Court to the United States District Court for the E.D.T.X. but presents no authority explaining why that would be the case.  (Dkt No. 75 at 6-7.)  As we explained in notes 5-6 above, the judicial officers overseeing the defendant's civil actions in the E.D.T.X. have recommended that the civil cases filed by the defendant in the E.D.T.X. be transferred to the D.D.C.  (The judicial officers in the E.D.T.X. did not suggest that there is jurisdiction in the E.D.T.X. over this criminal case.)

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By:        /MJF/
       Michael J. Friedman
       N.Y. Bar 4297461
       Assistant U.S. Attorney
       United States Attorney's Office
       555 Fourth St., NW
       Washington, D.C. 20001
       202-252-6765
       Michael.Friedman@usdoj.gov